# Philadelphia and Reading R. R. Co. *versus* Schertle.

1. Where in an action against a railway company for injuries or death alleged to have been caused by the negligence of the defendant's agents or servants, there is no evidence of such negligence, or at most a scintilla, it is the duty of the court to withdraw the case from the jury, and to give binding instructions in favor of the defendant.

2. A., a brakeman on a railroad train, was engaged on a dark night in coupling and uncoupling cars, in order to couple a certain freight car to an engine, it became his duty to remain on the steps of the engine tank, where he was already standing, while the engine backed to the car. He jumped off, however, from the step of the tank and crossed the track, an act which there was on necessity that he should perform; shortly afterwards the engine was backed, when A. was heard to cry out, and seen to spring back from the tank, the wheels of which almost immediately passed over his body and killed him. No one saw how or why A. fell. There was some evidence that

[Phila. & Reading Railroad Co. *v.* Schertle.]

the steps of the tank were defective in number and construction, but A., who had been employed about the engine in question for a long time, was not directly proved to have ever asked for their alteration, although the company was in the habit of making such changes on application of their employees; it also appeared that the road-bed was rough by reason of recent repairs. In an action by the widow and children of A. against the railroad company to recover damages for his death, alleged by them to have occurred while he was endeavoring to climb upon the tank, by reason of the failure of the company to provide proper steps and a smooth road-bed: *Held,* that there was no evidence of negligence to submit to a jury, and that the court should have given binding instructions to find for the defendant.

3. Per Paxson, J.—There is no duty on the part of a railway company to ballast its tracks for the safety of its employes, and except perhaps at a crossing, no such duty to the public.

March 18th 1881. Before Sharswood, C. J., Mercur, Gordon, Paxson, Trunkey, Sterrett and Green, JJ.

Error to the Court of Common Pleas of *Schuylkill county:* Of January Term 1880, No. 115.

This was an action on the case brought by Sarah Schertle, widow of George Schertle, deceased, for the use of herself and her children, against the Philadelphia and Reading Railroad Company, to recover damages for the death of her husband, caused, as alleged, by the negligence of the defendants.

On the trial, before Pershing, P. J., the evidence was to the following effect: George Schertle had been in the employ of the said company, as brakeman on a freight train, for about six years prior to September 25th 1874. He was a careful, sober and prudent man. On the morning of that day, before daylight, while engaged with his fellow employés in shunting a car on to a siding near Port Clinton, his leg got under one of the wheels of the engine-tender, and from the injuries so received he died the same day. The crew of the freight train consisted of the engineer and fireman, a front, middle and rear brakeman and conductor. On the occasion in question there was a car of the train to be left at Port Clinton; at this place the Little Schuylkill Railroad, a branch of the Philadelphia and Reading Railroad, makes a junction with the main line a short distance south of the station; the train stopped on the main line a short distance north of the station house; the car to be left at Port Clinton was uncoupled from the train, and, attached to the engine, was hauled over a short connecting track from the main line to the track of the Little Schuylkill Railroad, on a siding of which latter road the car was to be left; it was the duty of the front brakeman, Andrew Moss, to turn the switch, so that when the car would be run back by the engine it would run on the Little Schuylkill tracks; and it was the duty of George Schertle to watch the action of Moss, and when the switch would be turned to signal the engineer to come back with the engine and car; and then Schertle's duty was to get on to the rear end of the tank or tender, and as the car was being pushed back to

[Phila. & Reading Railroad Co. *v.* Schertle.]

uncouple it from the engine.    The car was pushed back and Shertle uncoupled it, but Moss did not succeed in getting the switch turned and the car was run back upon the connecting track, the same over which it had been taken, instead of the Little Schuylkill track. The engine gave only a slight impetus to the car, and the engine did not pass the switch.    It then became necessary to back the engine up to the car and couple it, and move it back over the switch on to the Little Schuylkill track.    It was George Schertle's duty to make this coupling.    The proper and customary place in which to do this was from the rear of the tank, a position which Schertle already occupied.    For some unexplained reason, however, he jumped off the tank and crossed the track.    The engine was immediately backed towards the car.    Suddenly Schertle was heard to cry out, and a moment after the wheels of the tank were felt to pass over his body.

No one saw, nor could any witness tell how George Schertle got under the wheel of the tank.    The plaintiffs claimed that the accident was caused by the negligence of the railroad company in two things : imperfect steps at the end of the tank, and that the road-bed at the place of the accident was dangerous, by reason of the filling or ballast between the sills not being up to the top surface of the sills.    There was some evidence that there was but one step on the tank ; but Andrew Moss, the front brakeman, testified there were two steps.    It was proved that George Schertle had used this step or steps for over a year immediately prior to the accident. There was no evidence that he ever complained that they were unsafe.    At the time of the accident the steps were bolted on the bumpers at the end of the tank and stood parallel with the tracks of the road.    On the day of the accident, and after it happened, the men in the employ of the company to make repairs, changed these steps from the position of parallel with the rails to the position of right angles with them.    One Stellwagon, who directed this to be done, testified it was not done because the changed position was thought safer, and that it was not ordered by any superior officer of the company, but must have been done at the request of some one of the crew, but he could not remember who it was.    All of the crew living denied that they had made the request. The plaintiff claimed, as an inference, that Schertle had made the request.

At the time of the accident employés of the railroad company were engaged in raising the grade of the tracks, near the switch where the accident occurred, and the ballast between the sills had not been filled up to the level of the sills.

The plaintiff claimed that the circumstantial evidence indicated that the deceased, in attempting to get on the tender, had missed his footing, either by reason of the rugged condition of the road-

bed or the insufficiency of the steps, or both, which the plaintiff alleged constituted negligence by the defendant company.

The defendant relied on the absence of evidence to connect the accident with the causes alleged, and insisted that the condition of the track and the position of the steps did not constitute negligence, but were matters of which the deceased was bound to take notice, and if they involved any risk it was an ordinary risk incidental to the employment of brakemen, for which the company was not liable.

The defendant therefore requested the court to charge, inter alia : " 9. That under all the evidence in this case, the plaintiffs cannot recover." Ans. " This would be taking the case from you, and we decline to so instruct you. We leave the facts for your consideration."

The court, in the general charge, submitted the question of negligence to the jury.

The defendant took this writ of error, assigning for error, inter alia, the answer to the ninth point and the submission of the question of negligence to the jury.

*James Ellis* and *James E. Gowen,* for the plaintiff in error.— While an employé is injured while in the discharge of his duty, he must prove that the employer, by his acts or omissions, has violated some duty imposed on him which has caused the injury complained of. The presumptions are against the servant : Parrott *v.* Wells, 15 Wall. 524 ; Weger *v.* Pennsylvania Railroad Co., 5 P. F. Smith 460. Where the evidence does not establish the breach of any duty by the defendant, the court should direct a verdict for the defendant : Weger *v.* Pennsylvania Railroad Co., *supra ;* Howard Express Co. *v.* Wile, 14 Id. 201 ; Ryan *v.* Cumberland Valley Coal Co., 11 Harris 384 ; Lehigh Valley Coal Co., *v.* Jones, 5 Norris 432 ; Mansfield Coal & Coke Co. *v.* Mary McEnery et al., 10 Norris 185 ; Pennsylvania Railroad Co. *v.* Fries, 6 Norris 234 ; Boldt *v.* New York Central Railroad Co., 18 N. Y. 432 ; Dynen *v.* Leach, 26 Law Jour. Exch. 221 ; Waller *v.* Southeastern Railway Co., 32 Id. 205.

*Farquhar* and *Hughes,* for the defendant in error.—Direct evidence of negligence is not essential where circumstantial evidence is equally convincing. It was competent for the jury to find, from the circumstantial evidence in this case, that Schertle's death was the result of the tank having a step on only one side, and improperly placed, or of the road-bed being in a bad condition, or both, and that such defects constituted the negligence of the company.

Mr. Justice PAXSON delivered the opinion of the court, May 2d 1881.

[Phila. & Reading Railroad Co. *v.* Schertle.]

This was an action brought by the widow and minor children of George Schertle, deceased, to recover damages for injuries result-ing in his death. The declaration alleges that said injuries were. occasioned by the negligence of the Philadelphia & Reading Rail-road Company, defendants below. The jury having found the negligence, the cause has been removed to this court, and several errors have been assigned to the rulings of the court below. As the seventh and last assignment, if well taken, renders a discussion of the others unnecessary, we will consider it here.

By the defendant's ninth point, the court was called upon to pass upon the sufficiency of the evidence, the point being, " that under all the evidence in this case, the plaintiffs cannot recover." The learned judge declined to so instruct the jury, upon the ground that it would withdraw the case from their consideration. This was the object of the point. It was not error to refuse it if there was sufficient evidence of the negligence of the defendant company to submit to the jury. On the other hand, it is equally clear that if there was no evidence, or at most a scintilla, it was the duty of the court to withdraw the case from the jury and give a binding instruction to find for the defendant. The authorities upon this point are numerous ; it is sufficient to refer to a few of the later ones : Howard Express Co. *v.* Wile, 14 P. F. Smith 201 ; Hoag *v.* The Railroad Co., 4 Norris 293 ; Penna. Railroad Co. *v.* Fries, 6 Id. 234 ; and Mansfield Coal & Coke Co. *v.* McEnery, 10 Norris 185.

I have looked in vain through this record for any evidence of negligence on the part of the defendant company. There is not even a scintilla. The deceased was, at the time of the accident, and had been for years prior thereto, a brakeman in the employ of the company. On the night of the injury, which unfortunately resulted in his death, he was engaged in coupling and uncoupling the cars of a freight train. While so engaged, in some manner unexplained to the jury, he fell under the wheels of the tank or tender of the locomotive, which passed over one of his legs, pro-ducing the injury complained of. As to how he fell, or the cause of his falling, there is not a word of evidence. The theory of the plaintiffs was that his fall was occasioned either by reason of the roughness or inequalities of the track, or in an attempt to get on the tank ; the allegation being that the step was defective, and that he missed his footing because of such defect. It appears from the evidence that the track at the particular point where the accident occurred, was in the course of being repaired ; that it had been raised a few inches, and that the space between the ties had not been ballasted or filled in ; that as regards the step, it was not de-fective in its construction, but, as plaintiffs alleged, was not in the position it should have been to insure the greatest amount of safety. Yet, even as to this point, the plaintiffs' own evidence was

[Phila. & Reading Railroad Co. *v.* Schertle.]

evenly balanced, while it was not denied that the deceased had used the step for a year without complaint to the company, and that if he had made objection to it, the rule or practice of the company required it to be changed to suit the crew operating the engine, of which the deceased was one.

Had there been evidence to show that the deceased came to his death by reason of the condition of the track or of the step, it would, notwithstanding, have been too weak and inconclusive to establish negligence on the part of the defendant company and to base a verdict for damages upon. There certainly was no duty to ballast the track for the safety of its employés, and except perhaps at a crossing, no such duty to the public. Besides the inequalities were occasioned by necessary repairs to the track, of which repairs, the deceased, as an employé of the company, must be presumed to have had knowledge.

There was not, however, as before stated, a particle of proof that either the track or the step had anything to do with his death. For aught that appeared, he may have fallen in a fit, or for some cause wholly disconnected with either. The case was submitted to the jury without evidence, and the verdict has no better foundation than a guess, or at most mere possibilities. This will not do. The practical effect of the judgment below is to take the property of the defendants and give it to the plaintiffs. This is not allowable, even in the case of a corporation.

Judgment reversed.