# Rundle *v.* Slate Belt Electric Street Railway Company, Appellant.

*Negligence—Street railways—Passenger—Runaway car—Sudden danger.*

Where in a case against a street railway company to recover damages for personal injuries, it appears that an electric car ran away down grade, and was abandoned by the conductor and motorman, that the track was not properly sanded, and that the plaintiff, a passenger, left his seat in the body of the car under the influence of fear, and placed himself on the rear platform where he was thrown off at a curve, the question of the company's negligence is for the jury, and a verdict and judgment for plaintiff will be sustained.

*Negligence—Damages—Salary during disability—Gift.*

In an action to recover damages for personal injuries, plaintiff is entitled to recover for the loss of his salary during disability, although the amount of it was paid to him by his employer, where the evidence shows that the money was paid by the employer not as a salary but as a gift.

*Negligence—Damages—Evidence—Carlisle tables.*

It is not error for the court in instructing the jury as to the regard to be given to the Carlisle tables to say "they may be of some aid to you if you get that far in the case, to determine how long it is likely that the plaintiff in this case would live. But they are not a positive guide to you; they are not binding upon you. Plaintiff might die to-morrow, or he might live sixty years, notwithstanding the Carlisle tables. You, as reasonable men, understand that. The duration of

his life cannot be told, cannot be found out. It depends upon his physical condition. It depends upon his acts and conduct and somewhat upon his social condition in some cases. And so with this warning I will state that these tables may be of some aid to you—if you find out that plaintiff is permanently disabled—may be of some aid to you in ascertaining how long he is liable to live."

Argued Dec. 5, 1906. Appeal, No. 102, Oct. T., 1906, by defendant, from judgment of C. P. Northampton Co., Feb. T., 1905, No. 28, on verdict for plaintiff in case of William A. Rundle v. The Slate Belt Electric Street Railway Company. Before RICE, P. J., PORTER, HENDERSON, MORRISON, HEAD and BEAVER, JJ. Affirmed.

Trespass to recover damages for personal injuries. Before TREXLER, P. J., specially presiding.

The court charged in part as follows:

[The plaintiff seeks to recover in this case because the company has omitted to do something that it should have done, or has done something that it ought not to have done. In other words, he says the company is to blame for this accident that happened to him. And in order to fully understand this question, gentlemen of the jury, it is well for you to consider what the relative duties of a common carrier such as this electric street railway company are in regard to the people it carries for hire. This man paid his fare, and by reason of the payment of that fare there was a contractual relation between them, and it was the duty of this company to carry this man safely and to use all means possible to avoid any accident occurring that it could have foreseen, or ought to have foreseen (could have seen is probably expressing it correctly), and they should provide against such occurrences as the reasonable human foresight could see would happen, or would likely happen.] [1]

[In such cases as this, and this has all been alluded to, the mere happening of an accident presumes that the company was negligent. In an ordinary case, if a man hurts you and causes you harm, you, being the plaintiff, would come into court; and the burden of establishing that negligence, showing that he is to blame for the occurrence, is upon you. But in cases of this character the law says this company has a higher duty than an

ordinary person, and that the happening of an accident to one whom it has engaged to carry, one who is in its charge, imputes to them negligence and blame, and that they should produce evidence in the court to show that they were not negligent, and in that way the burden is shifted.

Understand, gentlemen, considering all this case there nevertheless must be found by you that the defendant was negligent in order that you should bring in a verdict against him. The only effect of the rule is that the defendant must show the absence of it, and the burden is upon him to do that. But still the theory of recovery is that negligence was committed.] [2]

[And the plaintiff claims that he is permanently disabled; not totally disabled, but permanently, partially disabled, to use two adverbs; and it is a matter for you to decide whether or not that statement is borne out by the testimony in this case. And if you find that he is permanently disabled, then the question of his expectancy of life might come into this case, and would come into this case, and the Carlisle tables, as they are known, have been introduced into this case; and it is my duty to warn you that these tables are based upon the experience of insurance companies and they take a large number of people and, from their experience, they can find out what the average time is that a man of such age in full life will live, and they may be of some aid to you if you can get that far in the case, to determine how long it is likely that the plaintiff in this case would live. But they are not a positive guide to you; they are not binding upon you. Mr. Rundle might die to-morrow, or he might live sixty years, notwithstanding the Carlisle tables. You, as reasonable men, understand that. The duration of his life cannot be told, cannot be found out. It depends upon his physical condition. It depends upon his acts and conduct, and somewhat upon his social condition in some cases. And so with this warning I will state that these tables may be of some aid to you—if you find out that Mr. Rundle is permanently disabled—may be of some aid to you in ascertaining how long he is liable to live.] [3]

Defendant presented this point:

7. It appearing from the plaintiff's own evidence that he continued to receive his usual and regular monthly wages as assistant superintendent, without abatement or interruption

from the time of the injury, and that, with the exception of a week or ten days, he performed duties of his employment, although for a time they might not have been to the same extent or as efficient as before, the plaintiff is not entitled to recover as part of his damages, any compensation for loss of earnings. *Answer :* This is refused; although I am glad this point was submitted, because the court would have probably overlooked this. The evidence in this case is that the slate company, in which the plaintiff was employed, paid their monthly men, as they call them, if they were injured or got sick, irrespective of the work that they performed; and there is some evidence in this case which would indicate that this amount was paid to the plaintiff in this case. No, the evidence is undoubted that the amount was paid to the plaintiff in this case. I think it was ten days from the time that the accident occurred.

Mr. Stewart: The whole period.

The Court: And that for ten days he was disabled and could not go to the quarry, and that after the ten days, he testified, that, in order to occupy his mind, he went to the quarry, but that when he was at the quarry he performed certain duties; that he directed the men, and gave advice and so on. Now, these two facts are before you, the fact that the wages were paid even during the period when he did not work anything; and that the company paid their monthly men whenever they were hurt or got sick, irrespective of what they did. Now, if he was in the quarry and was occupying his position, and the relation between the employer and him was such that he was paid for what he was doing there, even if he did not perform his full duties, then he should not recover. If, however, you can find from the case, or rather, you do find from the case, that this amount was paid to him, not for the work he did there, but as a gratuity, in other words, that the company made him a present and that it was not paid him for the labor performed, then you can give him an amount which he has lost by reason of his loss of wages, irrespective of the amount which he received from his company as a present. The presumption is that when a man goes to work at such a place that he is there by reason of his usual occupation; but there is enough in this case, in my mind, to submit it to you, whether the amount he received after the ten days of idleness was a present from the

company, or was wages for the services he performed in and about the quarry. [9]

Verdict and judgment for plaintiff for $1,000. Defendant appealed.

*Errors assigned* were (1, 2, 3, 9) above instructions, quoting them.

*W. S. Kirkpatrick,* of *Kirkpatrick & Maxwell,* for appellant.— The standard of liability is not employment of all possible means to avoid any accident, nor is the defendant's liability dependent upon the mere fact of an injury to a passenger or the failure to carry him safely. The failure to carry a passenger safely must be due to some negligence or want of care on the part of the carrier, whether that want of care or negligence is an inference to be drawn from the facts and conditions attending the accident, or is shown by affirmative proof of an omission to guard against the accident, which reasonable human foresight could have prevented : Fredericks v. Northern Cent. R. R. Co., 157 Pa. 103 ; Meier v. Penna. R. R. Co., 64 Pa. 225 ; Farley v. Traction Co., 132 Pa. 58; Fearn v. West Jersey Ferry Co., 143 Pa. 122; Wadsworth v. Boston Electric Ry. Co., 182 Mass. 572 (66 N. E. Repr. 421).

If the plaintiff goes on with his evidence and shows by his witnesses the exact cause of the accident, and discloses no negligence on the part of the defendant, he is not entitled to go to the jury : Buckland v. R. R. Co., 181 Mass. 3 (62 N. E. Repr. 955) ; Lincoln Traction Co. v. Webb, 102 N. W. Repr. 258 ; Rupp v. Sarpy County, 98 N. W. Repr. 1042; Kay v. Metropolitan St. Ry. Co., 163 N. Y. 447 (57 N. E. Repr. 751).

The mere fact that the passenger was injured does not raise a presumption of negligence so as to shift the burden of proof upon the defendant where the evidence clearly shows the cause of the accident : Keller v. Railway Company, 149 Pa. 65 ; Penna. R. R. Co. v. MacKinney, 124 Pa. 462.

The ordinary rule is that it is contributory negligence to ride upon a platform while the car is in motion : Thane v. Traction Co., 191 Pa. 249 ; Gaffney v. Traction Co., 211 Pa. 91.

It is not sufficient to say, as the court did, that the tables were some aid but not conclusive in determining the probable

life of the plaintiff: Seifred v. Penna. R. R. Co., 206 Pa. 399; Kerrigan v. Penna. R. R. Co., 194 Pa. 98.

*Russell C. Stewart*, for appellee.—That the contract is to carry the passenger safely, plainly appears from the authorities: R. R. Co. v. Norton, 24 Pa. 465; Sullivan v. Philadelphia & Reading R. R. Co., 30 Pa. 234; Herstine v. Lehigh Valley R. R. Co., 151 Pa. 244; Fox v. Philadelphia, 208 Pa. 127.

That the learned judge of the court below was right in his statement of the rule, as to the burden of proof, and the way in which it shifts, we need only refer to a few of the many cases: Laing v. Colder, 8 Pa. 479; Sullivan v. Philadelphia & Reading R. R. Co., 30 Pa. 234; Meier v. Penna. R. R. Co., 64 Pa. 225; Spear v. P. W. & B. R. R. Co., 119 Pa. 61; Madara v. Shamokin & Mount Carmel Electric Ry. Co., 192 Pa. 542; McCafferty v. Penna. R. R. Co., 193 Pa. 344; Rauch v. Smedley, 208 Pa. 175; Sowers v. McManus, 214 Pa. 244; Clark v. Lehigh Valley R. R. Co., 24 Pa. Superior Ct. 609.

The defendant can claim no advantage from the charity of a third party: Alston v. Stewart, 2 Monaghan, 51; Norristown v. Moyer, 67 Pa. 355; Stahler v. Philadelphia & Reading Ry. Co., 199 Pa. 383.

Where the plaintiff, by his proof, has brought himself clearly within the class of selected lives tabulated, the Carlisle tables apply: Kerrigan v. Penna. R. R. Co., 194 Pa. 98; Iseminger v. York Haven Water & Power Co., 209 Pa. 615.

OPINION BY MORRISON, J., March 5, 1907:

This is an action of trespass based on alleged injuries to the plaintiff caused by the negligence of the defendant. The plaintiff having recovered a verdict and judgment thereon, the defendant appealed. The leading facts and the position of the appellant are so well stated in the history of the case by appellant's learned counsel that we cannot do better than to use the same here.

On October 20, 1904, the plaintiff was a passenger on one of the defendant's cars, from Pen Argyl to and into the borough of Bangor. The defendant's employees in charge of the car were the motorman and conductor. Nothing unusual happened until the car going at the ordinary rate of speed passed the corner of Pennsylvania avenue and seventh street, in said

borough, where it turned to descend a steep grade along Pennsylvania avenue. The car proceeded down the grade some distance when the motorman lost control of it, and towards the bottom of the hill it was running at a high rate of speed, and two of the trucks left the track. When the car was about halfway down the grade plaintiff left his seat, went to the rear of the car, placed himself near or upon the rear platform, and as the car rounded a curve at the foot of the hill, he was thrown or jumped into the street and was injured by the fall. From the plaintiff's testimony we learn that the motorman and conductor of the car were at the front attempting to control the car by the apparatus at that point, and as they neared the curve, having lost control of the car, they left it. It was at this curve that plaintiff was thrown or fell from the car as already stated.

It appears that the car and its appliances were of the proper and approved kind and in good working order, or supposed to be, and that the track at this point had been swept and sanded about midnight before the accident and before the car upon which the plaintiff took passage, left Pen Argyl. It was not contended that the motorman and conductor were not careful and experienced persons, competent for the work to which they were assigned.

The plaintiff's injury disabled him for several months as shown by the evidence in the case.

The negligence charged in the declaration was the running of the car at a dangerous rate of speed and the abandonment of the car by the motorman and conductor, causing the plaintiff, under the influence of fear, to leave his seat and place himself at the rear platform where he was thrown out of the car while it was rounding the curve at Fifth street and thus inflicting the injury in question. The actual manner in which the car was operated, its speed, its rounding the curve, and throwing the plaintiff from the rear platform where he had gone while the car was descending the grade, and the desertion of the car by the motorman and conductor appeared in the plaintiff's own testimony.

The court charged the jury that the mere happening of the accident to this plaintiff raised a presumption that the company was negligent, and that the burden was placed upon the

defendant to rebut this presumption. But in the same connection the learned court said to the jury: " Considering all this case there nevertheless must be found by you that the defendant was negligent in order that you should bring in a verdict against him. The only effect of that rule is that the defendant must show the absence of it, and the burden is upon him to do that. But still the theory of recovery is that negligence was committed."

We find in the record ten assignments of error, but we hope to fairly dispose of the questions raised without discussing these assignments seriatim. The first and third assignments are from the charge of the court. A careful reading of the charge, as a whole, convinces us that it is free from substantial error.

The main burden of the contention of the able counsel for the appellant is that the court erred in instructing the jury that the happening of this accident, in the circumstances disclosed by the plaintiff's testimony, prima facie established the negligence of the defendant and placed the burden upon it of rebutting such negligence, and further, that the court imposed too high a measure of liability upon the defendant. We will examine these questions in the light of some of the authorities in this state. First, we may safely say that if the plaintiff had remained in his seat in the car and it had left the track at the curve and he had been injured, no one will undertake to argue that upon showing such facts he would not have sufficiently established the negligence of the defendant. We think that proposition is so clearly established by Palmer, Appellant, v. Warren Street Ry. Co., 206 Pa. 574, that the question has gone beyond discussion. We have a long line of cases preceding the Palmer case to the same effect, but that case is so conclusive upon the subject that we will not load this opinion with citations and discussions of many of the other cases.

In that case Mr. Justice BROWN said : " but the case is within the unbending rule, applicable to railroad and street passenger railway companies alike, that, where a passenger on a car is injured, without fault of his own, there is a legal presumption of negligence, casting upon the carrier the onus of rebutting it : " citing a long list of cases. The learned justice then goes on to say : " and it is immaterial that the collision was not due to any defect in the car on which the plaintiff was riding, or

the machinery connected with it, but to a broken appliance on the car that ran into it; for the presumption of the defendant's negligence arises not only when the injury is caused by a defect in the road, cars or machinery, or by want of diligence or care in those employed, but by any other thing which the company can and ought to control as a part of its duty to carry the passenger safely."

But the learned counsel for the appellant seems to argue that the happening of the accident in the present case did not establish the negligence of the defendant because the plaintiff went upon the rear platform and was thrown off the car, while if he had remained in his seat, as the result proved, he would not have been injured.   But Mr. Justice BROWN has covered this question in the case from which we have just been quoting. That was a case where the plaintiff, impelled by the fear of the consequences of a collision, jumped from the car and was injured. We will here quote further from the Palmer case : " The company had confronted her with the peril from which she would have escaped, and it is and ought to be responsible to her for whatever naturally followed.   In trying to save herself, she was at the same time, unconsciously trying to save the company from the consequences of its negligence, and of her effort to do so it ought to be the last to complain, unless it is manifest that she acted rashly and imprudently.   ' In such a case, the author of the original peril is answerable for all that follows. . . . . If, therefore, a person should leap from the car under the influence of a well grounded fear that a fatal collision is about to take place, his claim against the company for the injury he may suffer will be as good as if the same mischief had been done by the apprehended collision itself.   When the negligence of the agents puts a passenger in such a situation that the danger of remaining on the car is apparently as great as would be encountered in jumping off, the right to compensation is not lost by doing the latter; and this rule holds good, even where the event has shown that he might have remained inside with more safety."   The learned judge then proceeded to say: " and the presumption of the common carrier's negligence is not confined to the case of injuries resulting from actual collision, but extends to those caused by an effort to escape it, when made on a well grounded belief that it will occur."

VOL. XXXIII—16

In the present case it was contended, and there was evidence in support of the contention, that the defendant's track had not been properly sanded ; that it was sanded about midnight and the sweating of the rails, as it was called, had destroyed or weakened the effect of the sand.  The car was running away and the motorman and conductor abandoned it, and the evidence was ample to warrant the jury in finding that the plaintiff went to the platform under a well grounded fear that there was great danger of remaining in the car.  It is idle, then, to argue that the negligence of the defendant was not sufficiently proved to cast the onus upon it of relieving itself from the apparent negligence by proof sufficient to satisfy the jury.

But the learned counsel further contends that the learned court held the defendant to a larger measure of liability than the law authorizes.  But reference again to the Palmer case justifies, we think, the instruction given to the jury by the court below.  On page 581, the rule in Meier v. Penna. R. R. Co., 64 Pa. 225, is quoted approvingly and we think that rule sustains the court below in the present case.  It is there said : " The utmost care and vigilance is required on the part of the carrier.  The rule does not require the utmost degree of care which the human mind is capable of imagining ; but it does require that the highest degree of practical care and diligence should be adopted that is consistent with the mode of transportation adopted."  Applying this rule to the operation of the defendant's car which injured the plaintiff leaves no ground for arguing that the defendant was not guilty of negligence. When a car runs away down grade and is abandoned by the employees in charge of it, and there is evidence that the track was not properly sanded, can it be said that the defendant used the utmost care and vigilance ?  Certainly not.

By reference to the charge of the learned court it will at once be seen that it does not go beyond the rule as above indicated. The learned court in part said : " This man paid his fare, and by reason of the payment of that fare, there was a contractual relation between them, and it was the duty of this company to carry this man safely, and to use all means possible to avoid any accident occurring that it could have foreseen, or ought to have foreseen (could have seen is probably expressing it correctly), and they should provide against such occurrences as

the reasonable human foresight could see would happen, or would likely happen." We do not think this language is open to just criticism.

It is contended that the court erred in not instructing the jury that the plaintiff was not entitled to damages for the loss of his salary during the time he was disabled by the accident. The evidence was that the plaintiff's employer paid him the same amount during his disability as he received when regularly employed. If the evidence had stopped here, undoubtedly the court ought to have instructed the jury not to have allowed loss of salary in estimating the damages: Quigley v. Penna. R. R. Co., 210 Pa. 162. But in that case there was no evidence whatever that the payments were made to the plaintiff as a gratuity or gift on the part of his employer. In the present case, the evidence does not stop with showing that the plaintiff received from his employer the same salary as before the accident. There is sufficient evidence from which the jury could find that the plaintiff's employer donated to him the equivalent of his salary for about five months, and whether or not it was a donation or gift or payment for services rendered was fairly submitted to the jury by the court. Therefore, if the jury found that this money was a gift, and assessed the amount of this salary in estimating the damages, there is no error in this which calls for a reversal: Norristown v. Moyer, 67 Pa. 355; Stahler v. Ry. Co., 199 Pa. 383; Quigley v. Penna. R. R. Co., is sufficient authority, under the evidence in the present case, to warrant the court in leaving it to the jury to find that the payments made by his employer to the defendant were a gift.

The only remaining question requiring discussion is raised by the third assignment wherein it is claimed that the court erred in instructing the jury in regard to the Carlisle tables. It may be conceded that the court was not strictly accurate in its instruction to the jury as to what these tables are based upon, but taking the whole instruction upon this point, we think there is no serious error therein. The learned court in part said: "and they may be of some aid to you if you get that far in the case, to determine how long it is likely that the plaintiff in this case would live. But they are not a positive guide to you; they are not binding upon you. Mr. Rundle might die to-morrow, or he might live sixty years notwith-

standing the Carlisle tables. You, as reasonable men, understand that. The duration of his life cannot be told, cannot be found out. It depends upon his physical conditions. It depends upon his acts and conduct and somewhat upon his social condition in some cases. And so with this warning I will state that these tables may be of some aid to you—if you find out that Mr. Rundle is permanently disabled—may be of some aid to you in ascertaining how long he is liable to live." We do not see in this any serious error. If the appellant was not satisfied with the instruction, and he desired more specific instruction, he should have called the court's attention to the matter by a point. We think the plaintiff by his proofs brought himself within the class of lives to which the Carlisle tables apply : Kerrigan v. Penna. R. R. Co., 194 Pa. 98. We think the charge of the court upon this point is in substantial harmony with the rule in Iseminger v. York Haven Water & Power Co., 209 Pa. 615.

Several of the assignments of error are based on defendant's points and the answer thereto, but a careful examination of the whole case fails to convince us of any serious error in the answers to these points. The plaintiff's recovery was $1,000, and it is not contended that this amount is so unreasonably large as to warrant this court in reversing the judgment and setting aside the verdict and granting a new trial. We think this case was well tried and fairly submitted to the jury.

The assignments of error are all dismissed and the judgment is affirmed.