## ED O'BRIEN v. MINNESOTA WESTERN RAILROAD COMPANY.[1]

June 28, 1929.

No. 27,434.

*Grant L. Martin, Junell, Dorsey, Oakley & Driscoll* and *Leavitt R. Barker,* for appellant.

*P. W. Morrison,* for respondent.

OLSEN, C.

Appeal by the defendant from a judgment in favor of the plaintiff for damages for personal injury alleged to have been caused by negligence on the part of the defendant.

Defendant railroad company owns and operates a railroad in this state running from Minneapolis westerly through Hennepin, Carver and McLeod counties. Plaintiff was in its employ as a member of its bridge crew and had been so employed in that capacity and as a section man for some four years. At the easterly edge of the small country village of Watertown in Carver county, the railroad crosses the Crow river on a wooden bridge. The westerly end of the bridge is about a block east of the railroad station in the village. On the north side of the track and some 25 or 30 feet west of the bridge is

[1]Reported in 226 N. W. 209.

a tool-house used for storing tools and appliances of railroad employes. The end of the bridge rests on piles driven into the ground. On top of the piles is what is known as a cap, running across under the track—a timber about 12 inches square. On top of this rest the ends of the bridge stringers some 8 by 16 inches in size, and on top of these rest the bridge ties carrying the rails. On the land side of these bridge piles are planks forming a bulkhead, extending up close to the rails to keep back the earth fill or roadbed leading up to the bridge. These planks extend out some two feet beyond the ends of the bridge ties, and as the earth slopes away from the track the plank ends project above the ground. On the river side of the piles and extending out around the ends of the cap, earth had been excavated so as to form a hole or opening about six feet wide at the top, three feet wide at the bottom, and some four feet deep, extending under the bridge from side to side. The excavation had been made either when the bridge was built or some four or five years before the accident here in question, and was left open to permit inspection, repair and replacement of the cap timber when needed.

On March 23, 1928, the night of the accident in question, plaintiff and two other employes of defendant were engaged in watching the bridge and protecting it against ice then moving in the river. Plaintiff had been down by the river and had come up to the station building to sleep for a short time. At about 2:30 a. m. he was awakened by the roadmaster and was told to go down and look at the river. The stream is some 20 feet below the bridge. His co-employes were down at the edge of the stream near the bridge. He walked from the station down to the bridge along the south side of the track just outside of the ends of the ties, where there was, as he states, a path or smooth ground leading to the bridge. When he came to the bridge and at a point just south of the end of the ties, he stumbled against the planks of the bulkhead, fell into the excavation around and under the cap timber, and suffered some injury. The night was dark, and plaintiff claims he could not see what was underfoot. He testified that he had worked on this bridge, re-

pairing it, before that time; that he had crossed it hundreds of times; that he had been up and down, to and from the river at the bridge, some 20 times the day before; that there were several ways to go down to the river at the bridge; that he had lived in the village for many years.

In his complaint plaintiff charges that the defendant was negligent in two respects: First, that it was negligent in failing to provide a safe place for him to work in that it should have covered or guarded the excavation around the cap timber of the bridge; and second, that its roadmaster was negligent in directing him to go down and look at the river without warning him of the danger of such excavation.

The court submitted to the jury only the first charge of negligence, that it was the duty of the defendant to provide plaintiff with a reasonably safe place in which to do his work and to keep and maintain the place in a reasonably safe and suitable condition.

That defendant cannot be charged with negligence on the ground that the roadmaster failed to warn plaintiff of any danger from this excavation seems apparent, and the court properly eliminated that question from its charge.

On the question whether there is any evidence to sustain a finding that the defendant was negligent in failing to provide plaintiff with a reasonably safe place in which to work, we reach the conclusion that there is no such evidence in the case. From the photographs in evidence it appears that the ground at the end of the bridge was uneven and rough and sloped away from the ends of the ties. There were holes or excavations around cap timbers in two or more places. There was a rough bank or slope down to the stream. The situation presents nothing apparently unusual where such a railroad bridge crosses a stream or gully. The so-called path on which plaintiff walked appears to end some 12 or 15 feet before it reaches the bridge. No doubt people intending to cross the bridge had walked along outside of the ends of the ties until they came to that point, where the ground outside of the ties became more uneven, and then had gone up on the ties or between the rails to cross the bridge. No path appears to lead up to or come near the place where plain-

tiff stumbled. Plaintiff had no work to do at the place where he fell. He had not been directed to take any given path or course. He had been back and forth from the river many times and knew several ways to go in safety. If he had stumbled against the end of a tie or against the plank of the bulkhead, as he did, and there had been no excavation there, his injury by falling on the ties or rails would likely have been as great. The failure to cover or guard this excavation, located as it was and in the situation here shown, cannot be held to have been negligence.

The following cases may be referred to as sustaining the conclusion reached: McCann v. M. & St. L. R. Co. 159 Minn. 70, 198 N. W. 300; Nelson v. Southern Ry. Co. 246 U. S. 253, 38 S. Ct. 233, 62 L. ed. 699; Missouri Pac. R. Co. v. Aeby, 275 U. S. 426, 48 S. Ct. 177, 72 L. ed. 351; T. St. L. & W. R. Co. v. Allen, 276 U. S. 165, 48 S. Ct. 215, 72 L. ed. 513; D. L. & W. R. Co. v. Koske, 278 U. S. 586, 49 S. Ct. 202, 73 L. ed. 234; Southern Pac. Co. v. Gloyd (C. C. A.) 138 F. 388; Kerrigan v. Pennsylvania R. Co. 194 Pa. 98, 44 A. 1069.

The conclusion reached makes it unnecessary to discuss the question of assumption of risk.

The judgment appealed from is reversed.

DIBELL, J. took no part.