· Docheney *v.* Pennsylvania Railroad Company, Appellant.

Argued October 9, 1934. Before FRAZER, C. J., SIMPSON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*Robert D. Dalzell,* of *Dalzell, Dalzell, McFall & Pringle,* for appellant.

*J. Thomas Hoffman,* for appellee.

OPINION BY MR. JUSTICE MAXEY, January 7, 1935:

Plaintiff and others of a train crew of the Crucible Steel Company were placing cars on a track of the Pennsylvania Railroad Company for the purpose of being incorporated into trains of the latter company for transportation. In the course of his duties plaintiff alighted from the cars to turn a switch near a street crossing. After accomplishing his purpose he signalled the engineer to proceed. His next act of duty was to throw a lever on one of the cars to cut it off from the train for switching purposes. Being unable to manipulate the lever from the ground he attempted to board the engine. He put one foot on the running board of the engine tender and attempted to take a step with his left foot. As he did so his foot went into a hole near the end of the ties and only eight feet from the switch stand. The resulting fall threw him under the wheels and his right foot was cut off. It was testified by several witnesses that this hole was eight or nine inches deep, twelve or fourteen inches in diameter and at the time it was filled with water to the surface and so covered by black cinders and soot as to make it invisible to view; it was described as looking "just like the ground." It had existed at that spot, "six to ten inches from the ends of the ties," for at least a month.

Plaintiff was lawfully on defendant's premises, and as the court below succinctly put it, "on business of his employer [the steel company] which was beneficial to the defendant, and it was the defendant's duty to maintain the right of way where men would be working in the operation of cars on its tracks in a reasonably safe condition." In Engle v. P. R. R. Co., 234 Pa. 305, 83 A. 301, it was held that plaintiff is entitled to recover where the evidence shows that at the time of the accident he was unloading a car on a switch; that his employer, a private manufacturing company, had the exclusive ownership and control of the switch, and always unloaded the cars after they had been placed on

the switch; and that the accident was due to the negligent act of the railroad company in running an engine and tender on to the switch and against the car on which plaintiff was working. See also 51 C. J., page 1103, section 1162.

In the case of Hastings et al. v. South Shore R. R. Co., 272 Pa. 212, 116 A. 155, two railroad companies jointly used the same tracks. The freight conductor of one company was killed while throwing a switch in the operation of his own cars, by a moving car of the other company. The evidence tended strongly to show that the operation of such car was negligent, and there was nothing shown to put the deceased upon notice that the train which struck him was likely to approach. It was held the case was for the jury. In his opinion Mr. Justice WALLING said: "Where two railroad companies use the same tracks each is required to exercise reasonable care to avoid injury to the servants of the other." See also Stewart v. Central R. R. Co. of N. J., 235 Pa. 311, 84 A. 38.

The case before us is squarely ruled by McDonald v. Lehigh Valley R. R. Co., 236 Pa. 541, 84 A. 1013. There a locomotive fireman sued the railroad company for personal injuries. Plaintiff in the discharge of his duty got off his engine after dark for the purpose of changing a switch. He had a light, but as he stepped down from the engine, the wind blew it out. He expected to alight upon level ground between the two main tracks of the railroad, directly opposite the switch stand which the trainmen were required to manipulate, which would have meant a distance of not more than eighteen inches. Instead of that his foot dropped into an excavation of a depth which nearly doubled the distance from the step of the engine to the ground. The space between the two tracks was used as a footway for trainmen and other employees. It was held that the question of the defendant's negligence and the plaintiff's contributory negligence was for the jury. Mr. Justice POTTER

said in his opinion: "The excavation was perhaps of a temporary nature, but it seems to have been left without proper lights or danger signals to give notice of its existence."

There is no substantial difference between the facts in the McDonald Case and those in the case at bar. There the hole was "between the two main tracks." Here the hole was between the main track and a switch. There the hole was at a point where the ground was "ordinarily smooth and level." Here the hole was at a point where the ground seems, from the exhibits, to be "ordinarily smooth and level," and it was described by witnesses as "good and solid" and as "in pretty good condition, hard." It was smooth enough for plaintiff to take "several steps" upon it without difficulty, until he stepped into the hole. In the McDonald Case the hole was at a point which was used as a footway for trainmen and other employees. Here the hole was at a point which was *obviously* a footway for trainmen and other employees if they had any duties to perform at that point, as this plaintiff had. He testified: "I took several steps from the switch west myself and tried to get the car off with the lift lever." The place where he took these "several steps" was a footway used by the plaintiff in the performance of his duties. No space on a railroad track is used as a footway except when employees have business at that point. That the plaintiff had duties to perform at the point where he was injured is not controverted. After his injury he was found lying eight feet east of the stand of the switch he had just thrown.

The decision in Kerrigan v. P. R. R. Co., 194 Pa. 98, 44 A. 1069, does not conflict with the decision in the McDonald Case. There the victim, a brakeman, stepped into a hole *between* two ties, this hole being "caused by a washout under the rails and between the ties." The Supreme Court in an opinion by Mr. Justice DEAN said: "This was not a footway for foot travelers or

employees; if the roadbed had been such a way, then ordinary care would have required planking on all the ties." It is a matter of common knowledge that the space *between* the ties on a railroad is not a footway for employees and it is equally a matter of common knowledge that the space six to ten inches *from the end of ties is* a footway for employees when they have duties to perform (as the brakeman-plaintiff had here) *which makes it necessary for them to traverse on foot that very space.*

The decision in Philadelphia & Reading R. R. Co. v. Schertle, 97 Pa. 450, does not apply to the case at bar. In that case there was no evidence of negligence on the part of the defendant company. Mr. Justice PAXSON there said: The deceased "in some manner unexplained to the jury, fell under the wheels of the tank or tender of the locomotive. . . . As to how he fell, or the cause of his falling, there is not a word of evidence. The theory of the plaintiffs was that his fall was occasioned either by reason of the roughness or inequalities of the track." He said further (by way of dictum): "Had there been evidence to show that the deceased came to his death by reason of the condition of the track or of the step [of the tank or tender of the locomotive], it would, notwithstanding, have been too weak and inconclusive to establish negligence on the part of the defendant company. . . . There certainly was no duty to ballast the track for the safety of its employees, and, except perhaps at a crossing, no such duty to the public." Even if we take this dictum as law, it does not control this case. Here it was not the failure to *ballast the track* nor the mere "roughness or inequalities of the track" that gave rise to the cause of action; it was the failure to eliminate a hole deep enough to be dangerous, at a place very near a switch and likely to be traversed by employees who had to throw that switch, and which was filled with water and coated with culm. It was virtually a "trap" to anybody walking in that

area, especially to an employee engrossed at the moment with important duties, as was this plaintiff. If the defendant company had permitted for a month a wire to be stretched above the ground and across the space where this plaintiff was tripped by the hole, who could question its negligence? This hidden hole was more dangerous even than a rope stretched across the roadbed at that point would have been, for a rope would have been far more obvious to anyone's view than was this hole filled with black-surfaced water.

In the McDonald Case the trial judge entered a nonsuit. In doing so, he said: "We must confess that under the circumstances of this case, we should have sustained plaintiff's contention were it not for the fact that we interpret the rulings of the Supreme Court in the cases of Philadelphia & Reading R. R. Co. v. Schertle, 97 Pa. 450, and Kerrigan v. P. R. R. Co., 194 Pa. 98 [44 A. 1069], to govern the case now before us." The Supreme Court held that the trial judge was *in error in entering a nonsuit,* and said that the facts in the McDonald Case "distinguished it from those cases [Phila. & Reading R. R. Co. v. Schertle, supra, and Kerrigan v. P. R. R. Co., supra] which the trial judge had deemed controlling. The defendant company was bound to use reasonable care to see that the approaches to the switch were kept in such condition that the trainmen who had occasion to approach this switch in the discharge of duty, could do so with safety provided they used due care for their own protection." The judgment was reversed with a procedendo.

The court below, in the instant case, refused to disturb the jury's verdict of $10,500 in favor of the plaintiff. Its action was proper.

The judgment is affirmed.