# Quigley v. Pennsylvania Railroad Company, Appellant.

*Appeals—Review—Excessive verdict—New trial.*

The Supreme Court will not consider an assignment alleging error of "excessive verdict" unless the verdict is so grossly excessive as to shock the court's sense of justice.

*Negligence—Damages—Evidence—Statement of claim—Charge.*

Where in a negligence case the statement of claim sets forth with sufficient clearness and precision that plaintiff was injured, the damages he sustained, and that his injuries were caused by the negligence of defendant, and no request is made for a more specific statement, it is not reversible error for the court to permit the plaintiff to detail minutely the results of his injuries.

In an action to recover damages for personal injuries it is not error for the court to permit the plaintiff to testify that since his injury he had refused remunerative employment in his business, where the purpose of the evidence is to show the kind of work plaintiff, as he alleged, was unable to perform after the injury, and so tending to show the nature of his injuries.

In an accident case the testimony showed that after the injury the plaintiff continued to receive a salary from his employer, and that he continued to perform services connected with his employment, although not to the same extent as before the injury. There was no evidence whatever that these payments were made to him as a gratuity or gift on the part of his employer. The court substantially charged that if plaintiff did not perform any service for his employer after the accident, and that what he received was a mere gratuity, plaintiff would be entitled to recover for the lost earnings as though he had not received the gratuity or gift. *Held,* that the instruction worked an injustice to the defendant, and was reversible error.

Argued Oct. 20, 1904.   Appeal, No. 183, Oct. T., 1904, by defendant, from judgment of C. P. Butler Co., Sept. T., 1904, No. 2, on verdict for plaintiff, in case of Edward J. Quigley v. Pennsylvania Railroad Company.   Before MITCHELL, C. J., DEAN, FELL, BROWN, MESTREZAT, POTTER and THOMPSON, JJ.   Reversed.

Trespass to recover damages for personal injuries.   Before GALBREATH, P. J.

At the trial it appeared that the negligence of the defendant was admitted.   The case turned solely upon the question of damages.

The portion of the statement of claim relating to the question of damages was as follows:

By reason of and as a result of such collision and wreck, the plaintiff was thrown backwards with great force and violence against the interior frame or woodwork, the seats and the floor of the passenger car or coach in which he was being carried, thereby causing and inflicting upon his person, severe concussions, cuts and bruises, rendering him for a time unconscious, and causing him great and excruciating physical and mental pain and suffering and doing great and permanent damage to his person and nervous system, injuring him so severely internally and in and about his head and spine and spinal cord and the bones at the base of his spinal cord that he was unable to sit upright or even leave his bed for several months, and is now able to leave the same only with the use of body supports or braces, and even then is able to walk only with great pain and difficulty and only for short distances ; is unable to use his eyes in reading and writing, his eyesight and the nerves of his eyes being badly injured by the shock ; cannot sleep quietly at night and suffers continually the severest physical and mental pain and anguish.

6. That by reason of the injuries so sustained, the plaintiff has been rendered totally unfit for and incapable of performing the labors or duties of his said profession or business of an expert inspector of oil or any other business or occupation he may desire to follow, and has thereby suffered a damage of $90,000, and has been compelled also to pay large sums of money for medical attendance, medicine, nursing, traveling expenses, hotel fare, care and attention, to wit: $10,000.

The court admitted under exception and objection evidence in detail relating to plaintiff's physical condition after the accident. [1–4]

Plaintiff was asked this question :

Q. Since the accident have you been compelled to refuse any work ?  A. Yes, sir.  Q. What, for instance ?  A. I have refused inspection of oil going to London.

Object to what he might have gotten from some other person ; we object to it as incompetent.

The Court : We will hear what work he has refused in order that the jury may understand something of the nature of the work and whether or not he was able to perform it, but as to what he could have received for the work I think we will not

receive that.   We will admit it on the proposition indicated for the present and hear you on the other later.

Bill of exceptions sealed. [5]

The court charged in part as follows :

[Now, gentlemen, it is also said if there was a displacement of a single vertebra of the spine, it would be evidenced by the plaintiff's inability to work.   A number of physicians have given their experience that if there was a dislocation the plaintiff would not be able to walk, or at least very poorly ; that it would impair his locomotion very materially.   On the other hand, Dr. Brush testified that there came a case within his own observation where there had been a dislocation to some extent and the party did walk.   Now, gentlemen, how is that ?   If the one is theory and if theory is contradicted by facts, theories must always give way to facts.   So that the question is one for the jury to determine as to the verity of opinions of physicians testifying on either side, and the determination of this question is wholly a matter for the jury.] [6]

[Now, gentlemen, had Mr. Quigley recovered from that at the time of this accident ?   It seems that at the time of the accident and sometime before it he had been performing his ordinary duties, and he says that morning when he left home he was a sound, well man or substantially so.] [7]

[If, on the other hand, he did not perform any services from the time of the accident and it was given more as a gratuity, a gift on the part of the company, we say that would not affect your consideration of the case, but he would be entitled to recover for lost earnings as though he had not received that gratuity or gift, because in a case of that kind a man's friends may be as good as they see fit to be and may present him with such gifts as money or other valuables as they see fit, and yet not be charged in a case of this kind.   It will be for you to determine whether he received it as salary for services rendered or as a mere gratuity or gift.] [8]

Plaintiff presented these points :

3. If the jury find that the plaintiff has rendered no services to his employer, the United States Pipe Line Company, since the time of the accident, they are not to allow in mitigation of damages any salary he may have received from his employer

since the accident.  *Answer :* We answer that by saying that it is affirmed, unless the jury find that the amount so paid to plaintiff was by way of compensation for services rendered by the plaintiff and not as a mere gratuity, as we have already explained in the general charge. [9]

Verdict and judgment for plaintiff for $21,440.  Defendant appealed.

*Errors assigned* among others were (1–5) ruling on evidence, quoting the bill of exceptions ; (6–9) above instructions, quoting them ; (14, 15) that the verdict was excessive.

*John M. Greer,* with him *John B. Greer* and *Thomas H. Greer,* for appellant, cited: McHugh v. Schlosser, 159 Pa. 480 ; Com. ex rel. v. Butler, 99 Pa. 535 ; Kehler v. Schwenk, 144 Pa. 348 ; Chicago, etc., R. R. Co. v. McDowell, 28 Am. & Eng. R. R. Cases (N. S.), 85 ; Todd v. Traction Co., 192 Pa. 587 ; Smith v. Times Pub. Co., 178 Pa. 481.

*James W. Lee,* with him *Clarence Walker, Cornelius D. Scully* and *Eugene Mackey,* for appellee, cited : McLaughlin v. City of Corry, 77 Pa. 109 ; Norristown v. Moyer, 67 Pa. 365 ; Alston v. Stewart, 2 Mona. 51.

OPINION BY MR. JUSTICE DEAN, December 31, 1904 :

The plaintiff, about thirty-four years of age, was an oil inspector for the United States Pipe Line Company and resided for a number of years at Oil City, Pennsylvania.  While a passenger on defendant's train on March 10, 1903, a collision occurred whereby he was seriously injured.  Alleging his injuries were caused by the negligence of the company he brought this suit for damages.  There was no contradiction of his testimony, that he was injured in the collision, but there was a serious conflict as to the nature of his injuries, their extent, whether he had been incapacitated thereby, and the probable duration of the incapacity, whether permanent or only temporary.  The court submitted the evidence bearing on the different questions raised to the jury, who found a verdict for plaintiff in the sum of $21,440.  Judgment having been entered on this verdict the railroad company brings this appeal assigning fifteen errors.

The last two, the fourteenth and fifteenth, claiming, that under the authority of Smith v. Times Publishing Co., 178 Pa. 481 the verdict is erroneous because excessive, we pass with a very brief notice. There are but few appellants who have a verdict against them, that do not regard it as excessive; most of them think there should have been none at all. The alleged injustice is a mere matter of opinion on their part in which the jury having before them the whole evidence widely differed from them. The " Times " case, although the law in that and every other case with like facts, under the act of 1891 was not intended as an invitation to every dissatisfied suitor to bring his case here by alleging error of " excessive verdict." When the verdict, as in the case cited, is *so grossly excessive* as to shock our sense of justice, we will seriously consider and pass on the assignments of error, not otherwise. In the years that have passed since that case was decided, although the same error has been alleged in numerous cases that have come before us, in not one of them has it been sustained and from our observation it will rarely be sustained in the future. So as to these two assignments, we overrule them both; we could not do otherwise, unless we arbitrarily said we do not believe the testimony of plaintiff's reputable expert witnesses who had every opportunity to ascertain the truth as to matters about which they testified. It is argued with much earnestness, that this is a power we ought to exercise unflinchingly to prevent injustice being done by prejudiced juries. If by this is meant we ought to exercise the power in every case where our judgment differs from that of the jury and the court below, we say no ; on the contrary, we ought to and will exercise it very sparingly as heretofore. Especially will we shrink from disturbing a verdict on this ground when the trial judge has by entering judgment approved it.

The assignments first to fourth inclusive, complain of the court permitting plaintiff to detail minutely the results of his injuries, the incontinence of urine, irregularity of bowels and such like, especially as such results were not particularly averred in the declaration. . The plaintiff's declaration, it is true, is somewhat general, but it avers with sufficient clearness and precision the collision, that plaintiff was injured, the damages he sustained and that his injuries were caused by the negligence

of defendant.  On proper cause shown, we have no doubt the learned judge of the court below, before trial would have compelled him to more particularly specify such results; but it went to trial without such application and has no excuse for alleging surprise now after verdict.   In fact from the testimony of its own expert witnesses we doubt if it was greatly surprised. Therefore these four assignments are overruled.

The fifth assignment is to the admission of plaintiff's testimony, that since his injury he had refused remunerative employment in his business.   The court admitted this because it would tend to show the kind of work plaintiff, as he alleged, was unable to perform after the injury, so tending to show the nature of his injuries; it was not admitted for the purpose of showing what he might have received for such work had he been able to perform it.   Plaintiff's counsel may have argued inferentially, from his answers, that his compensation would have been large, but the court committed no error in its qualified admission of the evidence.   This assignment is overruled.

Appellant's sixth, seventh, tenth, eleventh, twelfth and thirteenth assignments are all in effect to the charge of the court. We have examined them carefully and must say in view of the evidence, that there is not the semblance of well-founded error in any of them.   For example, it is argued by appellant in his sixth assignment that it is an accepted theory of the surgical world that a man whose spine is dislocated cannot walk.   Dr. Brush testified that a case came before him of a man with a dislocated spine who did walk.   In commenting on this the learned trial judge said : "Now, gentleman, how is this ?   If the one is theory and is contradicted by facts, theories must always give way to facts, so that the question is one for the jury."   We see no error in this ; all sound theories must be based on or be deducible from facts; if it be an accepted theory that a man with a dislocated spine cannot walk, then if it be established that a single man with a dislocated spine does walk, the theory must be narrowed or modified to one which accords with the facts, that men with dislocated spines seldom walk, or if the facts of walking become too numerous, the theory falls.

In none of these assignments to the comments of the learned judge do we discover anything more serious than that we have noticed ; all are overruled.

The eighth and ninth assignments raise a more serious question. As the ninth practically includes the eighth we shall discuss it alone. Plaintiff in his third point asked the court to instruct the jury as follows:

"If the jury find that the plaintiff has rendered no services to his employer, the United States Pipe Line Company, since the time of the accident, they are not to allow in mitigation of damages any salary he may have received from his employer since the accident."

"The court: We answer that by saying that it is affirmed, unless the jury find that the amount so paid to plaintiff was by way of compensation for services rendered by the plaintiff and not as a mere gratuity, as we have already explained in the general charge."

The argument is, that there was no evidence to justify the qualification by which the court left it to the jury to find whether the money received by plaintiff from his employer, the pipe line company, was a gratuity. There is no doubt but that after the injury plaintiff received from the company his regular salary. The plaintiff testifies that he often went to the refineries at Oil City after his injury and performed services for the company for which it and another company paid him $2,800 per year, just the sum he received before. Plaintiff's own testimony as to just how long after the injuries these payments continued is not clear but they continued for some time; it is clear, however, that during all the time he was receiving payment except for a few weeks when consulting surgeons he was performing services for his company, while not of the same extent perhaps as before the injury, they were of the same character. The treasurer of the company testifies that he paid plaintiff every month since the injury just as before; that he had one vacation lasting a month or two during that time. The company continued to pay his regular salary after his injury, and so far as his own testimony and that of the treasurer shows, the payment was for services, inefficient perhaps compared to those before his injury, but still for services rendered by him to the company. In the general charge to which the court refers the jury it says: "If on the other hand he did not perform any services from the time of the accident and it was given more as a gratuity, a gift on the part of

the company, we say that that would not affect your consideration of the case, but he would be entitled to recover for the lost earnings as though he had not received that gratuity or gift." Taking the general charge and answer to the point together, we think injustice was done defendant. True, the amount covered by the error is only a small part of the whole, still it was a substantial injustice. We can find no evidence in this voluminous paper-book which warranted the court in leaving it to the jury to find that this payment was a gratuity; on the contrary the evidence clearly shows the payment was practically for the same character of services he had rendered before the accident.

Counsel for appellee say they adopt as a clear exposition of the law the court's answer to plaintiff's third point. So do we, but the trouble is not with the law but with the evidence. The authorities cited by counsel abundantly sustain his argument; but from the evidence this was not a mere gratuity but wage or salary and as the very foundation of the suit is plaintiff's loss of earning power in the years succeeding the accident, there is no reason why he should be compensated for loss of earning power in the past when according to his own evidence that power was practically unabated for a year or two after the accident. The error was in permitting the jury to compensate him for earnings he had actually received. We think the court below, inadvertently perhaps, failed to make the distinction.

The eighth and ninth assignments are, therefore, sustained, the judgment is reversed and a v. f. de novo awarded.