Donald FEELEY

v.

UNITED STATES of America, Appellant.

No. 14738.

United States Court of Appeals Third Circuit.

Argued May 5, 1964.

Decided Nov. 4, 1964.

Marilyn S. Talcott, Appellate Section, Civil Division, Dept. of Justice, Washington, D. C. (John W. Douglas, Asst. Atty. Gen., Drew J. T. O'Keefe, U. S. Atty., Sherman L. Cohn, Atty. Dept. of Justice, Washington, D. C., on the brief), for appellant.

Jerome E. Ornsteen, Ornsteen & Lunine, Philadelphia, Pa., for appellee.

Before BIGGS, Chief Judge, and McLAUGHLIN and STALEY, Circuit Judges.

BIGGS, Chief Judge.

The plaintiff-appellant, Donald Feeley, a veteran of the United States armed forces, sustained severe physical injuries while engaged in overseas combat. These injuries culminated in a medical discharge for a mental disorder; psychoneurosis, anxiety reaction. This service-connected disability has resulted in Feeley's being rated as 50% permanently disabled by the Veterans' Administration, entitling him to disability benefits. Prior to July 7, 1960, Feeley frequently sought medical care for this condition, which he received free of charge from the Veterans' Administration.

The district court [1] found that on July 5, 1960, the plaintiff, while working for the City of Philadelphia, was injured in Philadelphia by a United States Post Office truck through the negligence of an employee of the United States Government. Feeley suffered injury to his right knee and leg and also an aggravation of his pre-existing service-connected psychoneurosis. In June of 1961, the plaintiff, while playing basketball, injured his right ankle. The evidence was in dispute as to whether or not this injury was the result of a weakened condition caused by the knee injury.

After these injuries, Feeley, realizing that his mental illness was worsening, sought further hospital and medical care from the Veterans' Administration, which he received free of charge.

The plaintiff then instituted this action under the Federal Tort Claims Act, 28 U.S.C. § 1346(b), to recover for the damages sustained by the negligence of the driver of the Post Office vehicle. The court below, sitting without a jury, found in favor of the plaintiff. Although the government does not contest the finding of negligence, it appeals from that part of the judgment which allowed the plaintiff, as a part of his damages, the reasonable value of the medical care furnished free by the Veterans' Administration and the award for future medical care. The appellant also claims that the trial court failed to make adequate findings of fact as required by Rule 52(a), Fed.R.Civ. Proc., 28 U.S.C., in respect to the amount of damages.

## I. VALUE OF SERVICES PROVIDED BY VETERANS' ADMINISTRATION HOSPITAL.

In awarding damages, the district court included an amount of $2055.-20, which it calculated to be the reasonable value of the medical care which the plaintiff received from the Veterans' Administration Hospital. There is no doubt that Feeley did not pay for this service, has not incurred any future liability for it, and that the service was rendered free of charge under Title 28, U.S.C.A. Nonetheless, Feeley argues that the trial court properly awarded damages to him for this gratuitous service under the collateral source rule. While it is well established that a plaintiff's recovery under the ordinary negligence rule is limited to damages which will make him whole, the collateral source rule allows a plaintiff further recovery under certain circumstances even though he has suffered no loss. See Restatement, Torts § 920, Comment *e*. The collateral source rule may be described as "the judicial refusal to credit to the benefit of the wrongdoer money or services received in reparation of the injury caused which emanate from sources other than the wrongdoer." [2] Under the collateral source rule a "plaintiff who has been paid his salary or a pension during disability, or had his medical expenses paid by another, or out of the proceeds of an accident insurance policy, may still recover full damages for

---

1. Feeley v. United States, 220 F.Supp. 718 (E.D.Pa.1963).

2. Maxwell, The Collateral Source Rule in the American Law of Damages, 46 Minn.L.Rev. 669, 670–71 (1962); see generally Note, Unreason In the Law of Damages: The Collaterial Source Rule, 77 Harv.L.Rev. 741 (1964); 48 Cornell L.Q. 353 (1963).

these items from a defendant who is liable for the injury. To this extent, plaintiff may get double payment on account of the same items. The defendant wrongdoer should not, it is said, get the benefit of payments that come to the plaintiff from a collateral source." [3] However, where the defendant has been the source of the payment, the damages, generally, cannot include the benefit conferred by the defendant.[4] But in instances in which the United States is the payer-defendant, this general rule has sporadically succumbed to a proliferation of judicial decisions attempting to accommodate the collateral source rule to the unique position of the federal government with its many separate branches and agencies, each independent of the other.[5]

■■■ The case at bar arises under the Federal Tort Claims Act, 28 U.S.C.A. § 2674, which provides that, "The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances * * *." Under this provision, the applicable state law, not federal law controls, in the first instance,[6] in determining the computation of damages. Richards v. United States, 369 U.S. 1, 82 S.Ct. 585, 7 L.Ed.2d 492 (1962); Massachusetts Bonding & Ins. Co. v. United States, 352 U.S. 128, 77

S.Ct. 186 (1956); Hatahley v. United States, 351 U.S. 173, 76 S.Ct. 745, 100 L.Ed. 1065 (1956); Knecht v. United States, 242 F.2d 929 (3 Cir. 1957); Landon v. United States, 197 F.2d 128 (2 Cir. 1952); United States v. Gaidys, 194 F.2d 762 (10 Cir. 1952); Leon v. United States, 193 F.Supp. 8 (E.D.N.Y.1961). Thus, in the case at bar, the plaintiff must show that the governing state law, here Pennsylvania law, would apply the collateral source doctrine. More particularly, Feeley's case must rest upon a showing that Pennsylvania would not offset the free hospital care rendered by the Veterans' Administration from his damages. If Pennsylvania state law requires that in a suit against a private defendant the hospital and medical care conferred by the Veterans' Administration be deducted from the award, *a fortiori* there would have to be an appropriate reduction in the damages sought by Feeley in this case. Cf. United States v. Harue Hayashi, 282 F.2d 599 (9 Cir. 1960). We have endeavored to research the applicable state law and have concluded that Pennsylvania law would not allow recovery.

It is incorrect to analyze the ambit or boundaries of the collateral source rule in the context of a search for a single applicable rule. The application or nonapplication of the rule encompasses many different situations and each one must be

---

3. Harper & James, The Law of Torts 1343–1344 (1956).

4. Note, 63 Harv.L.Rev. 330, 333 (1950).

5. See Maxwell, supra note 2 at 689–692; United States v. Price, 288 F.2d 448 (4 Cir. 1961); United States v. Harue Hayashi, 282 F.2d 599 (9 Cir. 1960); United States v. Gallops, 207 F.2d 48 (5 Cir. 1953); United States v. Gray, 199 F.2d 239 (10 Cir. 1952); United States v. Brooks, 176 F.2d 482 (4 Cir. 1949); Jennings v. United States, 178 F.Supp. 516, 532 (D.Md.1959), aff'd on these grounds, 291 F.2d 880 (4 Cir. 1961); United States v. S.S. Washington, 172 F.Supp. 905 (E.D.Va.1959), aff'd sub nom. United States v. Texas Co., 272 F. 2d 711 (4 Cir. 1959); Tessier v. United States, 164 F.Supp. 779 (D.Mass.1958), aff'd, 269 F.2d 305 (1 Cir. 1959); Wuth

v. United States, 161 F.Supp. 661 (E.D. Va.1958); Fulmer v. United States, 133 F.Supp. 775, 784 (D.Neb.1955); Snyder v. United States, 118 F.Supp. 585, 600 (D.Md.1953), aff'd in part, rev'd in part, sub nom. United States v. Guyer, 218 F. 2d 266 (4 Cir. 1954) rev'd on other grounds, 350 U.S. 906, 76 S.Ct. 191, 100 L.Ed. 796 (1955); cf. Knecht v. United States, 242 F.2d 929 (3 Cir. 1957).

6. If the state law of damages is punitive, then the state law will not apply and the federal court will adopt a compensatory standard for damages. Massachusetts Bonding & Ins. Co. v. United States, 352 U.S. 128, 77 S.Ct. 186, 1 L.Ed.2d 189 (1956). This exception is required by the last phrase of 28 U.S.C.A. § 2674, which directs that the United States "shall not be liable * * * for punitiive damages."

analyzed separately.[7] There are some basic considerations which must be kept in mind in deciding whether a plaintiff should be allowed to recover from both the defendant and the collateral source. In some circumstances, there may be no double recovery at all because the plaintiff may be legally obligated to repay his original source of reimbursement, under the doctrine of subrogation. At other times, one can justify a double recovery where the original source was supplied by the plaintiff, himself, out of resources that would otherwise have been available to him for other purposes, or where the source was the result of a gift to the plaintiff, in which there is an actual or presumed donative intent with no thought given by the donor to compensate the plaintiff. See 2 Harper & James, supra, note 3 at 1348.

With these basic principles in mind, we turn now to an examination of Pennsylvania state law. We can find no Pennsylvania case and plaintiff has cited none presenting the fact situation that we have hypothesized, a situation in which the plaintiff has received free government medical and hospital care and is seeking the value of these services as damages against a private defendant. We note, however, that the majority view would allow recovery in this situation. Rayfield v. Lawrence, 253 F.2d 209, 68 A.L.R.2d 868 (4 Cir. 1958); Hudson v. Lazarus, 95 U.S.App.D.C. 16, 217 F.2d 344 (1954); Sainsbury v. Pennsylvania Greyhound Lines, Inc., 183 F.2d 548, 21 A.L.R.2d 266 (4 Cir. 1950); Standard Oil Co. of California v. United States, 153 F.2d 958, 963–964 (9 Cir. 1946) (dictum), aff'd on other grounds, 332 U.S. 301, 67 S.Ct. 1604, 91 L.Ed. 2067 (1947); Chapman v. Brown, 198 F.Supp. 78 (D. Hawaii 1961); Burke v. Byrd, 188 F. Supp. 384 (N.D.Fla.1960); Gillis v. Farmers Union Oil Co., 186 F.Supp. 331 (D.N.Dak.1960); Fullilove v. United States Cas. Co., 129 So.2d 816, 832–833

(Ct.App.La.1961); Plank v. Summers, 203 Md. 552, 102 A.2d 262 (1954). Contra Evans v. Pennsylvania R. Co., 255 F. 2d 205, 70 A.L.R.2d 158 (3 Cir. 1958); DiLeo v. Dolinsky, 129 Conn. 203, 27 A.2d 126 (1942).

Recent dictum by the Pennsylvania Supreme Court would seem to indicate that Pennsylvania law follows a broad collateral source rule. Thus, in Boudwin v. Yellow Cab Co., 410 Pa. 31, 32–33, 188 A.2d 259 (1963), it was stated that "The victim of a tort is entitled to receive from his tortfeasor the full amount he is entitled to, as the result of the latter's negligence, regardless of what the former receives from other sources. For instance, it would be entirely improper, in a personal injury case, for the defendant to show that the plaintiff was receiving benefits under an accident insurance policy, or that he was on a pension, or was obtaining assistance from the government as a war veteran or in any other capacity." Again, in Lobalzo v. Varoli, 409 Pa. 15, 17, 185 A.2d 557, 558 (1962), "A person who is injured through the fault of another is entitled to receive suitable damages from the wrongdoer regardless of payments received by the victim from sources other than the wrongdoer's pocketbook." In an earlier Pennsylvania case, Littman v. Bell Tel. Co., 315 Pa. 370, 381, 172 A. 687, 692 (1934), the Supreme Court stated "Insurance in behalf of the injured person, or any other compensation from a collateral source, cannot be set up by the wrongdoer in mitigation of damages." However, the cases do not support these broad contentions and, in fact, there are contrary statements indicating that Pennsylvania follows a purely compensatory scheme in awarding damages. See Goodhart v. Pennsylvania R. Co., 177 Pa. 1, 35 A. 191 (1896).

An analogous situation to the case at bar is the situation in which the injured plaintiff claims damages for lost wages,

7. See generally authorities cited at notes 2–4, supra. Compare Drinkwater v. Dinsmore, 80 N.Y. 390 (1880) and Coyne v. Campbell, 11 N.Y.2d 372, 230 N.Y.S. 2d 1, 183 N.E.2d 891 (1962) with Healy v. Rennert, 9 N.Y.2d 202, 213 N.Y.S.2d 44, 173 N.E.2d 777 (1961).

even though he has been paid his full wages by his employer.[8] The collateral source problem arises because there has been no actual loss of wages thus presenting baldly the double recovery problem. This question was first before the Pennsylvania Supreme Court in Quigley v. Pennsylvania R. Co., 210 Pa. 162, 59 A. 958 (1904). In the cited case the trial court had instructed the jury that damages would not be diminished if it found that the wages were a gift by the employer. On appeal, this instruction was held to be error, but it is not clear whether the case adopted a broad rule against recovery, or whether the error was due to the particular facts of the case. In that case the plaintiff had continued to work, and this fact could have been vital in ruling out any donative intent or could have been deemed to have shown that the plaintiff was able to work and thus suffered no damages. However, the court alluded to the fact that the plaintiff was not able to fully perform his work and his salary was paid during a short period in which no services were performed. In addition, the case contains a rather ambiguous statement that "The error was in permitting the jury to compensate him for earnings he had actually received." 210 Pa. at 169, 59 A. at 961. This statement could easily support either interpretation under the facts of the case. However, in Rundle v. Slate Belt Elec. St. Ry. Co., 33 Pa.Super. 233 (1907), the Superior Court ruled that it was proper to instruct the jury that they might include lost wages as an item for recovery, because there was sufficient evidence to find that the employer's payment was a gratuity. Unfortunately, the court did not spell out the facts upon which the jury could have found a gratuitous payment. The Supreme Court seemed to reject Rundle in Pensak v. Peerless Oil Co., 311 Pa. 207, 166 A. 792 (1933), in which it held that since the plaintiff received his wages, he could not recover for lost wages. The court stated that plaintiff would not be heard to argue that the payment was a gift from his employer because such an argument would open the courts to possible fraud and misrepresentation. The case is, however, distinguishable, because the plaintiff was a part owner of the family business that had paid him his salary. In Schwoerer v. City of Philadelphia, 167 Pa.Super. 356, 74 A.2d 755 (1950), the Superior Court again held that the plaintiff could receive a double recovery where the salary payments were gifts by the employer. The Court went further and held that the donative intent was evidenced by the fact that the plaintiff performed no services for the employer. The Supreme Court, in Stevenson v. Pennsylvania Sports & Enterprises, Inc., 372 Pa. 157, 93 A.2d 236 (1952), expressly followed this ruling on the theory that the defendant should not be able to benefit from the employer's generosity. This case was followed, however, by Kite v. Jones, 389 Pa. 339, 132 A.2d 683 (1957), in which the Pennsylvania Supreme Court stated the rule to be, as announced in Stevenson, supra, that where the employer's payment is a gift the plaintiff is entitled to a double recovery. However, the same facts that led the court in Stevenson to conclude that the jury was justified in finding that the payments were a gift, the fact that the plaintiff performed no services for his employer, failed to persuade the majority in Kite that the jury's finding that there had been a gift should be affirmed. In Kite the court stressed the fact that the plaintiff was an executive of his company. In fact, he was the vice-president. Although there was apparently no inquiry into the size of the company, it is possible that when this decision is combined with the decision in Pensak, supra, one could conclude that where the employee is part

---

8. This situation must be distinguished from the claim for impairment of future earning power, since in that case the plaintiff's future earning power may be impaired even though there has been no diminishment in his current wages. See Messer v. Beighley, 409 Pa. 551, 187 A. 2d 168 (1962); Bochar v. J. B. Martin Motors, Inc., 374 Pa. 240, 97 A.2d 813 (1953).

of the management of the donor, Pennsylvania courts are more stringent in looking for a true donative intent. However, this analysis does not square Kite with Stevenson, because the plaintiff in Stevenson was a manager of the donor employer.

Kite did not prevent the court, in Layman v. Doernte, 405 Pa. 355, 175 A.2d 530 (1961), from declaring in broad dictum that where an injured plaintiff is carried on the payroll at the same rate of pay, but is unable to perform his regular duties because of injuries and can perform only light work, the full wage payments are attributable to the employer's generosity and does not diminish the tort-feasor's obligation.

In summing up Pennsylvania law under this line of cases the best that can be said from the plaintiff's point of view is that where the payment is a true gift by the employer, there can be double recovery. From the defendant's standpoint, on the most recent holding, Kite v. Jones, supra, it might well be argued that there can be no double recovery for lost wages. Regardless of which position is correct, or, indeed, even if neither is correct and some intermediate position is the correct one, a full-blown collateral source rule approach would, in all cases, treat the employer's payment as a gift,[9] thus allowing double recovery. It is clear that Pennsylvania does not go that far, but looks, at the least, for a true donative intent on the part of the employer before it will allow a double recovery, although it is not quite clear what facts will sustain a finding of donative intent. By looking for a true donative intent instead of settling for a fictional one, if it allows a double recovery at all, the Pennsylvania courts seem to recognize that the idea of a gift embodies the generous intention that the benefit be in addition to all other compensation and does not, in itself, em-

body notions of compensation for the injury.

Perhaps as further indicative of the general reluctance in Pennsylvania to adopt a broad double recovery rule is Antonelli v. Tumolo, 390 Pa. 68, 132 A.2d 285 (1957), a case in which the plaintiff was denied damages for lost wages because he was paid his full salary while taking sick leave. Many jurisdictions would allow recovery on the theory that there really is no double recovery because future sick leave is diminished.[10] Thus, one might easily conclude that the plaintiff has really paid for the receipt of his wages by withdrawing money from the bank, so to speak. The Pennsylvania court did not base its reasoning on this ground, however.

None of the Pennsylvania decisions involving pensions and disability insurance establish a broad collateral source rule. In Littman v. Bell Tel. Co., 315 Pa. 370, 172 A. 687 (1934), the broad collateral source language, supra, was spoken in the context of excluding evidence that the plaintiff had already received compensation from an insurance company for his disability. While there is no indication that the insurance company would have a right of subrogation, thus negating any double recovery problem, it does appear that the premiums paid for the insurance were paid by the plaintiff himself. This fact is not entirely clear from a reading of the case, but this is the impression one acquires from a fair reading of it. If the plaintiff did pay the premium, one can see a possible reason for allowing a limited double recovery because the defendant, it may be argued, should not be allowed to benefit from the plaintiff's foresight. It can be contended that it should not make any difference whether the plaintiff has insured himself against emergencies by salting away emergency funds, or has

9. "Often of course the intent was never even thought out by the donor, certainly not expressed. In these cases of private generosity the best solution seems to be a rule of thumb that would give greatest scope to the donor's generosity."

10. Maxwell, supra note 2 at 679–680; Note, 77 Harv.L.Rev., supra note 2 at 744.

2 Harper & James, op. cit. supra note 3 at 681; see Note, 77 Harv.L.Rev., supra note 2 at 743–744.

prepared for emergencies through commercial insurance. In either case, he has himself paid for the recovery from the collateral source. However, Littman may be read even more narrowly because there may well have been a right of subrogation in the insurance company. See Topelski v. Universal South Side Autos, Inc., 407 Pa. 339, 180 A.2d 414 (1962); cf., City of Philadelphia v. Philadelphia Rapid Transit Co., 337 Pa. 1, 10 A.2d 434 (1940).

In the pension cases, either the benefits consisted entirely of funds committed by the plaintiff, Kline v. Thornton, 331 Pa. 71, 200 A. 88 (1938), or there was a clear right of subrogation, Palandro v. Bollinger, 409 Pa. 296, 186 A.2d 11 (1962). Compare Topelski v. Universal South Side Autos, Inc., supra. Thus, there is no double recovery problem in this area.

■ Clearly, Pennsylvania allows no diminishment in damages for workmen's compensation recoveries. Boudwin v. Yellow Cab Co., 410 Pa. 31, 188 A.2d 259 (1963); Rice v. Shenk, 293 Pa. 524, 143 A. 231 (1928) (dictum); Lengle v. North Lebanon Township, 274 Pa. 51, 117 A. 403 (1922). However, this aspect of the collateral source rule is founded on the fact that there is a right of subrogation in the insurance carrier and, therefore, no double recovery. Lengle v. North Lebanon Township, 274 Pa. 51, 117 A. 403 (1922).

There is also, however, some indication in Lengle that an additional reason for allowing full recovery from the tortfeasor is because workmen's compensation recoveries do not fully compensate for the injury. This reasoning seems ill-considered, however, because the right of subrogation negates any double-recovery. Were this the true reason for allowing full recovery in workmen's compensation cases, rather than the fact that the compensation carrier is subrogated to the rights of the injured plaintiff against the tortfeasor, the plaintiff would get a full recovery merely by deducting the compensation award from his tort damages. It would seem, then, that the

collateral source rule in workmen's compensation cases is for the protection of the insurance carrier and not for the protection of the plaintiff. Nevertheless, the Superior Court, in Blatt v. C. C. Davis Constr. Co., 184 Pa.Super. 30, 133 A.2d 576 (1957), seized upon this alternate rationale in Lengle as precedent for holding it error to admit evidence of workmen's compensation benefits in mitigation of tort damages in a peculiar fact situation in which it would appear that there would be no right of subrogation. Thus stated, Blatt would appear to support a double-recovery rule. However, the court never mentioned the subrogation aspect. Furthermore, the defendant apparently did not argue that the evidence was admissible to mitigate the damages but, rather, that the evidence was admissible on the issue of credibility. We can only conclude that neither the litigants nor the court realized the uniqueness of the case and that its precedent value is doubtful, at least on the ground on which the court purports to decide the case.

It is clear that Pennsylvania does allow double recovery where the collateral source is unemployment insurance. Lobalzo v. Varoli, 409 Pa. 15, 185 A.2d 557 (1962); Rice v. Shenk, 293 Pa. 524, 143 A. 231 (1928) (dictum); Labick v. Vicker, 200 Pa.Super. 111, 186 A.2d 874 (1962). This rule emanates from dictum in Rice v. Shenk, and seems to be inconsistent with the majority of collateral source rule cases in Pennsylvania. The state court has never explained the rationale on which the cases rest, nor has it attempted to reconcile this line of cases with its other collateral source rules. Our only explanation for this deviation from the general pattern of Pennsylvania cases is that it somehow presents a special situation, at least to the Pennsylvania courts.

The cases of public and private benevolence involving medical care are also on point. In Norristown v. Moyer, 67 Pa. 355 (1871), the Supreme Court held that there should be no diminishment in damages for the monetary aid that the plain-

tiff received from charitable subscriptions. Here, apparently, the aid was in the form of specific charitable subscriptions on behalf of the specific plaintiff, and thus viewed, the case can be reconciled as being a gift with no thought of compensation. However, even this limited view of the case is inconsistent with two later cases that hold that the plaintiff cannot recover for the value of free nursing services performed by members of his own family, since he paid nothing for the services. Woeckner v. Erie Elec. Motor Co., 182 Pa. 182, 37 A. 936 (1897); Goodhart v. Pennsylvania R. Co., 177 Pa. 1, 35 A. 191 (1896). Compare Lambert v. Barry, 96 Pa.Super. 221 (1929). These cases support a purely compensatory scheme for damages and are clearly inconsistent with the wage and unemployment cases allowing recovery. Perhaps these cases have been overruled *sub silento* by the later wage cases and the Pennsylvania courts would today allow recovery on the theory that the services were truly a gift to the injured plaintiff, thus effecting a return to the approach under Norristown v. Moyer, supra.

A case we find very much in point is Gaydos v. Domabyl, 301 Pa. 523, 152 A. 549 (1930). Here a mentally deranged child, an inmate of a county home as an indigent, was the survivor in a wrongful death action for the death of his parents. The court held that since the commitment to the county home absolved the parents from support, there was no pecuniary loss to the plaintiff and, therefore, there could be no recovery. We view this case as having *continuing validity* and as not overruled on the gift theory, because it is reasonable to assume that statutory benefits furnished to the needy by a government are only intended to assure that certain minimum needs are fulfilled and are not intended as a gift in the form of an additional bounty on the recipient. 2 Harper & James, supra note 3 at 1350. The view is supported by Comment *f* of Section 924 of the Restatement of Torts:

"The value of medical services made necessary by the tort can ordinarily be recovered although they have created no liability or expense to the injured person, as where a physician donates his services.[11] Where a gift is intended to be made to the injured person its benefits should not inure to the tortfeasor. *However, there can be no recovery for the value of services rendered gratuitously by a state-supported or other public charity.*"[12] We feel that Pennsylvania would follow this analysis in the case at bar. The benefits this country bestows on its veterans seem intended to ensure that certain basic medical and hospital protection will be available to a veteran. It is a matter, as the plaintiff states in his own brief, of caring for the veteran. See the legislative history concerning service benefits contained in 38 U.S.C.A. at page 1, *et seq.* It seems not to be a matter of a gift or additional bounty to be bestowed on the veteran. We hold, therefore, that Pennsylvania law does not allow a double recovery here. See United States v. Gaidys, 194 F.2d 762 (10 Cir. 1952).

However, even if we are wrong on the result that state law would reach here, the plaintiff has two additional obstacles to overcome. First, he must show that this payment is from a collateral source. Secondly, proving that much, he must also show that the Federal Tort Claims Act, which is a compensatory scheme, would allow recovery here.

In the determination of whether or not the payment was from a collateral source, state law, even if it applies, is likely to be of little help. Most cases involving the United States as a defendant will be litigated in a federal forum and, certainly, all Federal Tort Claims Act cases will be in the federal courts. 28 U.S.C.A. § 1346(b). Perhaps useful analogies could be found in state cases in which the state is a defendant, but none has been found by this court bearing on the problem at bar. Therefore, we need not decide whether it is federal or state law

11. See Nelson v. Federal Mogul Service, 27 Pa.Dist. & Co. R.2d 222 (Phila.1962).

12. Emphasis added.

that controls in deciding whether a payment by the United States is a payment from a collateral source, since we have no choice but to look to other federal decisions to help guide us toward the correct result.

The question now before us is one of first impression in this circuit, having been expressly left open by us in Knecht v. United States, 242 F.2d 929 (1957). See also, Schwartz v. United States, 230 F.Supp. 536 (E.D.Pa.1964). Neither has the Supreme Court yet ruled on this issue. In Brooks v. United States, 337 U.S. 49, 69 S.Ct. 918, 93 L.Ed. 1200 (1949), the Supreme Court held that servicemen could maintain an action under the Federal Tort Claims Act for injuries sustained while in active service and, addressing itself to the problem at bar, stated, "Without the benefit of argument we now see no indication that Congress meant the United States to pay twice for the same injury. Certain elements of tort damages may be the equivalent of elements taken into account in providing disability payments. It would seem incongruous, at first glance, if the United States should have to pay in tort for hospital expenses it had already paid, for example. * * * But the statutory scheme and the Veterans' Administration regulations may dictate a contrary result. The point was not argued in the case * * * [and] it is obvious that we are in no position to pass upon the question of deducting other benefits in the case's present posture." Id. at 53–54, 69 S.Ct. at 921. It is clear that this statement is not holding, or even dictum, but it does represent a starting point for further analysis.

On remand, the Court of Appeals for the Fourth Circuit, United States v. Brooks, 176 F.2d 482 (1949), held that the hospital expenses borne by the government through the Veterans' Administration should not be included in the

plaintiff's damages. See also, Standard Oil Co. of California v. United States, 153 F.2d 958, 963 (9 Cir. 1946), aff'd on other grounds, 332 U.S. 301, 67 S.Ct. 1604 (1947); Wuth v. United States, 161 F. Supp. 661 (E.D.Va.1958); [13] Fulmer v. United States, 133 F.Supp. 775, 784 (D. Neb.1955). The plaintiff seeks to distinguish the Fourth Circuit's decision in Brooks, supra, on the basis that there the plaintiff was still in active service and, therefore, was suing his employer for damages for which the employer had already paid, due to the negligence of the employer.

This argument ignores the distinction made by the Supreme Court in Feres v. United States, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950) between the relationship of the plaintiff in Brooks [14] and the relationship of the plaintiff in Feres to the United States. In Feres the Supreme Court held that a serviceman on active duty who suffers injuries incidental to his military service cannot maintain an action under the Federal Tort Claims Act. Brooks was distinguished because there the serviceman was on furlough at the time he sustained his injuries. The basic deficiency in the plaintiff's argument is that the only reason the plaintiff in Brooks was able to maintain his action at all, in light of Feres, was that at the time of the injury he was more in the posture of a private citizen than a serviceman. The fact that he was then employed by the government was an incidental and fortuitous circumstance. Viewed in this light, the fact of employment did not help the plaintiff in Brooks, but was a neutral factor that did not hinder recovery.

█ We are of the view that the decision of the Court of Appeals in Brooks, supra, is correctly decided and should be followed. The defendant United States has provided free hospital care for these specific injuries. While it is true that the plaintiff became entitled to the bene-

---

13. The district court was, of course, bound by its own circuit court's decision in Brooks.

14. Brooks v. United States, 337 U.S. 49, 69 S.Ct. 918 (1949).

fits because of his status as a veteran and his pre-existing service-connected disability, and not because he was the victim of a tort committed by a federal employee, the fact is that the United States has paid for the hospital care here in dispute, while the plaintiff has paid nothing for the care. To allow the plaintiff to recover for this item in his damages would not only result in a double-recovery for him, but also a double-payment out of the general treasury by the United States. We are careful, however, to limit this result to the facts of this case. This decision casts neither approval nor disapproval on such possibly distinguishable situations as where the payment is out of a specially funded source, see United States v. Harue Hayashi, 282 F. 2d 599 (9 Cir. 1960), or where the plaintiff has paid a part or all of the premiums necessary to establish the source or fund. See United States v. Brooks, 176 F.2d 482 (4 Cir. 1949).

Neither do we disagree with the case on which plaintiff places his primary reliance, United States v. Gray, 199 F.2d 239 (10 Cir. 1952). That case is, however, inapposite here. In Gray, the district court did not award the plaintiff, as a part of his damages, the value of the hospital care rendered by the Veterans' Administration.[15] The issue of the value of these services arose because the government wished to prove the value of these services in order to reduce the damages award and the district court held the evidence inadmissible. The government then appealed and the Court of Appeals upheld the district court's order excluding the evidence, on the theory that there was nothing in the Federal Tort Claims Act to indicate that amounts paid for hospitalization under the Veterans' Administration Act should offset recoveries under the Federal Tort Claims Act. While this broad language does support the plaintiff's position, it would be error to ignore the context in which the words were spoken. The Court of Appeals for the Tenth Circuit was considering only whether the value of the hospital services should be deducted from the damages award before it, which was composed almost entirely of compensation for pain and suffering and loss of earning capacity. There was no award for the hospitalization and medical expenses that had been borne by the government and the district court, on remand, awarded none.[16] Thus, the case stands for nothing more than the proposition that the value of Veterans' Administration hospital care cannot be offset against other items of damages such as pain and suffering.

Since we hold that the plaintiff cannot recover the value of the free hospital care rendered by the government under either of the alternative grounds we have discussed, we need not decide now whether a collateral source recovery, which seems to embody elements of punitive damages in some situations, is repugnant to the Federal Tort Claims Act which exempts the United States from liability for punitive damages. See note 6, supra.

## II. FUTURE MEDICAL DAMAGES.

The district court awarded the plaintiff Twelve Thousand Dollars ($12,000) for future psychiatric medical expenses. 220 F.Supp. at 720. The government argues that this was error because the plaintiff's past practice of employing the free government hospital and medical facilities indicate that he will do so in the future. Therefore, the government will be forced to pay twice for this future care, which it is not required to do under the principles which precluded recovery for the past free hospital care.

■ However, acceptance of the government's position would result in forcing the plaintiff, financially speaking, to seek only the available public assistance.

15. The district court's findings of fact and conclusions of law are unreported. Gray v. United States, No. 3147 (D.Col. Oct. 20, 1951).

16. See Gray v. United States, No. 3147 (D.Col. April 20, 1953) (Unreported).

Private medical care would be obtained at the plaintiff's own expense. We think that this is an unconscionable burden to place on the plaintiff. A victim of another's tort is entitled, we think, to choose, within reasonable limits, his own doctor and place of confinement, if such care is necessary. To force a plaintiff to choose between accepting public aid or bearing the expense of rehabilitation himself is an unreasonable choice. The plaintiff may not be satisfied with the public facilities; he may feel that a particular private physician is superior; in the future because of over-crowded conditions he may not even be able to receive timely care. These are only a few of many considerations with which an individual may be faced in selecting treatment. The plaintiff's past use of the government facilities does not ensure his future use of them. He will now have the funds available to him to enable him to seek private care. He should not be denied this opportunity.

It is true that if the plaintiff should decide to seek care from the Veterans' Administration, the defendant may well be paying twice for the same element of damages. However, this is dependent on whether the government can refuse to render free care. This factor, however, should not be a consideration in awarding damages under the Federal Tort Claims Act, but rather is a policy judgment to be made in the administration of veterans' benefits.

## III. SUFFICIENCY OF THE DISTRICT COURT'S FINDINGS OF FACT.

█ The government contends that the District Court did not make sufficient findings of fact, in accordance with Rule 52(a) of the Rules of Civil Procedure.[17] Rule 52(a) is intended to provide the appellate court and the litigants with a clear understanding of the trial court's judgment. I. C. C. v. Cardinale Trucking

Corp., 308 F.2d 435 (3 Cir. 1962); Hartford-Empire Co. v. Shawkee Mfg. Co., 147 F.2d 532, 535 (3 Cir. 1944). "The judgment should stand if the opinion below gives the appellate court a clear understanding of the basis of the decision." Bowles v. Cudahy Packing Co., 154 F.2d 891, 894 (3 Cir. 1946).

█ The government's position is that the trial court failed to meet this standard in that it did not apportion the damages between those attributable to the plaintiff's pre-existing mental condition and those attributable to aggravation of that condition by the 1960 accident. It is evident, however, that the district court only awarded damages to compensate the plaintiff for the aggravation of his pre-existing condition: "This case involves an aggravation of plaintiff's pre-existing psychoneurosis. Therefore, in addition to the pain and suffering resulting from the injury to his knee, he is entitled to an award for the unusual amount of mental suffering due to the psychoneurosis, anxiety reaction, which occurred here. * * * The amount allocated to future psychiatric care is that amount necessary to return the plaintiff to the condition he was in prior to the accident." 220 F.Supp. at 720. The damages awarded for the lost wages and past medical expenses seem to us also to be based on the aggravation of the pre-existing injury.

However, the government quite correctly argues that the trial judge made no findings of fact of a causal relationship between the defendant's negligence and the later basketball injury to the plaintiff's ankle. Our mathematical calculations lead us to the conclusion that the district court perhaps did not include in the plaintiff's damage award the Hahnemann Hospital bill for treatment to the plaintiff's ankle. This would lead one to believe that the district court perhaps did not find the requisite causal connec-

17. Rule 52(a) provides, in part, "In all actions tried upon the facts without a jury * * * the court shall find the facts specially and state separately its conclusions of law thereon * * *."

tion. However, there apparently was included in the damage award the bill from Dr. Kaplan in the amount of $481.00. Dr. Kaplan testified that he treated the plaintiff for both injuries, yet there is no indication in the record whether his bill was for both injuries or only for the knee injury. If it encompassed treatment for both injuries the district court's judgment would be inconsistent.

We are also troubled by additional problems involving the subsequent ankle injury, although not raised by the government. There is some testimony by Dr. Kaplan which would tend to establish that treatment of the knee injury was further complicated by the ankle injury. We feel it is necessary for the district court to determine, if it first finds no causal connection between the defendant's negligence and the subsequent ankle injury, whether any part of the cost of treatment for the knee was due to the subsequent basketball injury. In addition, we find some testimony indicating that perhaps the plaintiff's mental condition was worsened by the subsequent ankle injury. If the district court finds no causal connection between the ankle injury and the defendant's negligence, it must then determine whether the ankle injury further aggravated the plaintiff's mental condition so that a part of the amount of money necessary to restore the plaintiff to his pre-1960 condition also included damages for this additional aggravating circumstance. In this connection, it will be necessary for the trial court to re-examine the amounts awarded by it for pain and suffering and to make proper findings of fact and conclusions of law in respect thereto in accordance with this opinion and Rule 52(a). It is clear, as we have stated, that the trial court must deduct from the amount awarded as damages the value of the hospital and medical care rendered to Feeley without charge by the Veterans' Administration.

Accordingly, the judgment of the court below will be vacated and the cause will be remanded with directions to proceed in accordance with this opinion.