**Robert J. BENSON, Plaintiff-Appellant,**

**v.**

**AMERICAN EXPORT ISBRANDTSEN LINES, INC., Defendant-Appellee,**

**v.**

**ATLANTIC & GULF STEVEDORES, INC., 3rd Party Defendant.**

**No. 72–1463.**

United States Court of Appeals, Third Circuit.

Argued April 5, 1973.

Decided May 4, 1973.

George J. O'Neill, Philadelphia, Pa., for plaintiff-appellant.

John P. Penders, Marshall, Dennehey & Warner, Philadelphia, Pa., for defendant-appellee.

Before McLAUGHLIN, ADAMS and ROSENN, Circuit Judges.

## OPINION OF THE COURT

ADAMS, Circuit Judge.

In this appeal, Robert J. Benson, plaintiff-appellant, a longshoreman who sustained serious injuries while working on a vessel, and who recovered what he believed to be an inadequate amount in the district court, contests the ruling of the trial judge permitting the jury to consider whether Benson was contributorily negligent and thus, under admiralty law, subject to having his recovery reduced. Benson contends also that in the conduct of the damage part of the trial, the judge committed reversible error. We hold that it was error to allow the question of contributory negligence to go to the jury. Therefore, we reverse the district court in its denial of plaintiff's motion for a directed verdict on the issue of contributory negligence and its reduction of the damage award based on the finding of contributory negligence.

Benson was injured on April 17, 1968, while helping to ready the S. S. Exchequer for cargo operations. The S. S. Exchequer, owned by defendant-appellee, American Export Isbrandtsen Lines, Inc., was berthed alongside a pier extending into the Delaware River from the Philadelphia shore. In preparing the S. S. Exchequer, Benson was working in the area of the forward-most hatch, the Number 1 hatch, on the shelter deck. As is the norm on freighters, the hatch was closed over with wooden hatch covers, boards about one foot wide and nine feet long, placed side by side, extending fore and aft. The ends of those boards rested, not on the edge of the hatch, but on two steel beams about three inches short of each edge. A third steel beam supported these boards at their midpoint. As part of the preparation, Benson was walking along the hatch cover, with two fellow workers, guiding into position a heavy steel plate being lowered by a crane. The steel plate was to be used to permit the operation of a forklift truck. One of the hatch covers suddenly "see-sawed" under Benson,

flew up, struck the side of his head, and then fell through to a deck twenty feet below. Benson, by catching the boards on either side of the gap created by the now-fallen board, was able to keep from plunging the twenty feet himself. This hatch cover was never recovered. As a result of the mishap, Benson sustained serious back injuries, and subsequently brought suit in the district court.

The trial was bifurcated, the issue of liability being severed from the issue of damages. American Export conceded that the ship's unseaworthiness was a cause of the injury, but contended that Benson's own negligence contributed to his injury. After the presentation of the evidence relating to this allegation, Benson moved for a directed verdict on the issue of contributory negligence. This was denied by the trial court and the issue was submitted to the jury which found that plaintiff's negligence was a 20% cause of his injury. Consequently, when the damage verdict was returned by the jury, it was reduced by one-fifth.

██ Contributory negligence is not a complete bar to recovery in an action based on unseaworthiness [1] but a finding that a seaman, or one in his position,[2] was contributorily negligent can be used to mitigate damages.[3] As with the doctrine in negligence actions, however, it is the burden of the defense to prove the contributory negligence of the plaintiff.[4]

██ The parties advanced at trial several theories attempting to explain the board's "see-sawing" action. Some of the theories postulated a defect that would be observable by the reasonably prudent longshoreman,[5] others were bottomed on a latent defect.[6] The trial judge held that, by adducing testimony that the defect might have been patent, the defense had supplied adequate evidence to avoid a directed verdict on the issue of contributory negligence. We disagree, and hold that the postulation of a series of theories does not satisfy the burden of proof required to permit an issue to be submitted to the jury. This is so especially when the article of evidence that might reveal the cause of the accident was not retrieved by the party bearing the burden of proof, and the evidence presented demonstrates that there could be alternative causes of the accident, some of which under these circumstances would be a basis for imposing liability, others of which would result in a decision adverse to the one carrying the burden.

██ The plaintiff contends that he was prejudiced when defense counsel was permitted to cross-examine Benson on compensation he received in violation of the "collateral source" rule. That rule provides that, in general, knowledge of receipt of workmen's compensation, or similar benefits, should be kept from the jury, lest such data be used to diminish the plaintiff's recovery.[7] Here, however, the information concerning compensation benefits was introduced during cross-examination to refute the

---

1. The distinction in maritime torts between unseaworthiness and negligence of the shipowner is not clear. For a full discussion of the doctrine of unseaworthiness, its origins and its differences from negligence, *see e. g.* Mitchell v. Trawler Racer, Inc., 362 U.S. 539, 550–570, 80 S.Ct. 926, 4 L.Ed.2d 941 (1960) (Frankfurter, J., dissenting).

2. The doctrine of unseaworthiness was extended to protect longshoremen injured aboard ship in Seas Shipping Co. v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946).

3. Pope & Talbot v. Hawn, 346 U.S. 406, 74 S.Ct. 202, 98 L.Ed. 143 (1953).

4. W. E. Hedger Transp. Corp. v. United Fruit Co., 198 F.2d 376, 379 (2d Cir.), cert. denied 344 U.S. 896, 73 S.Ct. 275, 97 L.Ed. 692 (1952).

5. Among the possibilities raised were that the board was too short, that it was not properly resting on the steel beam, or that it was visibly rotted.

6. These theories include the possibility that the board broke, that it was rotted beneath the metal cap at one end, that the middle beam was out of place, or that it was warped and shifted.

7. Feeley v. United States, 337 F.2d 924, 926 (3d Cir. 1964). The basis of the rule is the refusal of the courts to permit

impression created by the plaintiff that he had very reluctantly submitted to a painful, exploratory back operation in order to cooperate with the physicians. Defendant, in refutation, attempted to show that Benson's motivation was not a desire to cooperate with his doctors, but a fear of having his workmen's compensation benefits terminated. Under these circumstances, we do not find that permitting this questioning constituted reversible error.

■ Benson further asserts that the trial judge's repeated admonitions to his counsel to refrain from coaching the witnesses, and the ultimate holding that counsel was in contempt unfairly prejudiced the plaintiff. While our review of the transcript indicates some question whether counsel's conduct was objectionable or contemptuous, we do not find that the trial judge's warnings were so prejudicial as to constitute reversible error. Moreover, when counsel was advised that he was being held in contempt, it was done at sidebar, out of earshot of the jury. Therefore, we reject these contentions.

■ It is also suggested by Benson that by erroneously permitting the issue of contributory negligence to be submitted to the jury, the district court prejudiced the amount Benson ultimately recovered, beyond the percentage reduction directly attributable to the finding of contributory negligence. Since the trial was in two stages, the issue of damages was separated from the issue of liability. Thus, in considering the amount of the award the jury was not, at that time, focusing on the alleged contributory negligence of Benson. Rather, its award reflects nothing more or less than its attempt to calculate damages. Benson hypothesizes that the damage award would have been greater had the jury not been allowed in the first part of the trial to consider the possibility that Benson was contributorily negligent. To

hold that such speculation requires a new trial on the issue of damages would be to put conjecture over consideration. This we decline to do.

Therefore, we reverse the district court insofar as it refused to direct a verdict on the issue of contributory negligence and reduced the damage award in consequence thereof. We remand the case to the district court for entry of a judgment in favor of the plaintiff, awarding the full amount found by the jury plus interest and costs. As to all other claims, we affirm the district court.

GERALD McLAUGHLIN, Circuit Judge (dissenting).

The majority opinion asserts that upon the record of this appeal the trial judge committed legal error by refusing to conclude as a matter of law that the plaintiff-appellant was not contributorily negligent.

The court opinion puts the best possible face on its theory, but in view of the facts of the accident to the plaintiff it has taken on an impossible task in its self imposed proposition that appellant was completely free from contributory negligence. The court below did not claim that plaintiff was guilty of contributory negligence. It merely held that from the facts presented it was a jury question as to whether appellant was or was not guilty of contributory negligence. Admittedly, as stated in the court opinion that there was "the issue of contributory negligence". The appeal record shows it to have been a very live issue which the district court rightly held was an important factual problem to be decided by the trial jury. The necessarily thin viewpoint that the question was one of law for the court is impossible to accept under the facts before us. I would affirm the judgment of the trial court.

---

the tortfeasor to be benefited by money or services received by the injured plaintiff from other sources intended to compensate plaintiff for his injury or loss.