## Akins v. Philadelphia

*Albert W. Sheppard, Jr.*, for plaintiffs.
*Joseph H. Foster* and *Armando A. Pandola, Jr.*, for defendants.

CAESAR, *J.*, June 3, 1980—Plaintiffs filed a wrongful death and survival action against Drexel University and the City of Philadelphia as a result of the drowning death of their son in a swimming pool allegedly maintained by the City and used by a summer camp supervised by Drexel.

Defendant Drexel, in its answer, averred that it did conduct a summer sports program, at no charge to participants, in cooperation with the National Collegiate Athletic Association and the Community Service Administration. In new matter, Drexel then pleaded:

"22. At the time of the death of plaintiffs' decedent, plaintiffs' decedent was covered by a life insurance policy in the amount of $10,000.00 payable to the parent-plaintiffs for accidental death and the parent-plaintiffs were paid $10,000.00 in benefits.

No premium was paid by the parent-plaintiffs for this insurance policy and the funds for the insurance came out of the sports program.

"23. This defendant hereby claims that they are entitled to a credit on any verdict which plaintiffs may obtain in the amount of $10,000.00."

Pursuant to Pa.R.C.P. 1017(b), plaintiffs filed preliminary objections in the nature of a motion to strike paragraphs 22 and 23 of Drexel's new matter, arguing that the allegations in those paragraphs constitute irrelevant, immaterial and impertinent matter. Drexel contends that under the facts, the life insurance proceeds may be used as a credit against tort liability, arguing that the collateral source rule does not apply to deny Drexel credit for the $10,000.

Under the collateral source doctrine, a tortfeasor is not entitled to mitigation of damages because of payments received by an injured person from an independent, or collateral, source:

"The collateral source doctrine is predicated upon the theory that a tortfeasor has no interest in, and therefore no right to benefit from, monies received by the injured person from sources unconnected with the defendant. The doctrine, however, does permit the tortfeasor to obtain the advantage of payments made by himself or from a fund created by him; in such an instance the payments come, not from a collateral source, but from the defendant himself." Yarrington v. Thornburg, 58 Del. 152, 155, 205 A. 2d 1, 2, 11 A.L.R. 3d 1110, 1113 (1964).

A plaintiff's recovery under the ordinary negligence rule is limited to damages which will make him whole. But the collateral source rule permits a plaintiff further recovery under certain circumstances, even though he may have suffered no loss,

where the law feels that the tortfeasor should not receive the benefit of money or services received in reparation of the injury which emanate from sources other than the wrongdoer: Feeley v. United States, 337 F. 2d 924 (3d Cir. 1964); Thomas v. Penn Central Co., 379 F.Supp. 24 (W.D. Pa. 1974).

The question of law to be addressed in deciding the instant motion is whether the collateral source rule prohibits Drexel from receiving credit against any possible verdict for the life insurance proceeds paid to plaintiffs.

No Pennsylvania case has been found directly on point. However, analogous cases involving medical payments made by defendants' insurers to injured plaintiffs are instructive.

In Finley v. Lohr, 45 D. & C. 2d 62 (1968), defendant, in his answer containing new matter, alleged that his insurance company paid plaintiffs' medical expenses resulting from an auto accident and that plaintiffs were barred from recovering those expenses again in a trespass action against defendant for personal injuries resulting from the accident. The court overruled plaintiffs' preliminary objections to defendant's answer and new matter, adopting the "most logical view," as exemplified in the Delaware Superior Court's decision in Yarrington v. Thornburg, 198 A. 2d 181, affirmed 58 Del. 152, 205 A. 2d 1 (1964). It was defendant's premiums that helped to create the fund from which the medical payments were made, and plaintiff played no part in creating the separate fund. As Yarrington noted, this case differed substantially from those situations where payment was made by a source wholly independent of the defendant.

A similar result was reached in Bahl v. Williams, 51 Erie 70 (1968). There the court commented that the philosophy underlying the collateral source rule is that either the injured party or the tortfeasor will receive a windfall if part of the pecuniary loss is paid for by an outside source and that it is more just that the windfall should inure to the benefit of the injured party than to the tortfeasor.[1] This conclusion and reasoning, based on substantial justice, does not apply where the "collateral source" is defendant himself. "Under those circumstances no one gets a windfall and if a recovery were allowed under those circumstances the result would be that the plaintiff would receive a double recovery and that the defendant would be mulcted twice for the same item of damages." Bahl, supra, at 75.

Defendant was also found entitled to credit for payments by his insurer in Scheipe v. Scheipe, 71 Schuyl. 29 (1975); Lock v. Sterner, 59 D. & C. 2d 463 (1972); Foulkrod v. Forbes, 52 Erie 46 (1969); and Krineski v. McKinney, 43 D. & C. 2d 295, 50 Erie 66 (1967). It follows that "'[t]he collateral source rule may be described as the judicial refusal to credit to the benefit of the wrongdoer money or services received in reparation of the injury caused which emanate *from sources other than the wrongdoer*.'" Kagarise v. Shover, 218 Pa. Superior Ct. 287, 289, 275 A. 2d 855, 856 (1971), quoting Feeley, supra, at 926. (Emphasis supplied.)

In the instant case, if Drexel paid the life insurance premiums in question, and if plaintiffs received benefits under that policy because of a death

---

1. In certain situations, subrogation would result in neither party's receiving a windfall.

due to defendant's negligence, and if plaintiffs did not in any way contribute toward the premiums, defendant is entitled to a credit in the amount of benefits paid. Justice is not served by defendant's paying twice, i.e., insurance premiums and damages. By crediting Drexel, plaintiffs are still made whole and defendant is not penalized for its foresight in purchasing insurance.

However, in its new matter, Drexel identifies the premium payer as "the sports program." It is not clear from the pleadings what "the sports program" is or what its relationship is to Drexel. In light of this ambiguity, and considering the record in its current state, this court determines that Drexel has not sufficiently pleaded its entitlement to a credit in paragraphs 22 and 23 of its new matter.[2]

Accordingly, the court issues the following

## ORDER

And now, June 3, 1980, upon consideration of plaintiffs' preliminary objections to new matter filed by defendant Drexel University, it is hereby ordered and decreed that said preliminary objections are sustained and paragraphs 22 and 23 of said new matter are therefore stricken.

And it is further ordered that defendant, Drexel University, is granted leave to file amended new matter and/or counterclaim within 30 days from the date of this order.

---

2. The state of the record also does not permit the court to conclude that the insurance premiums and benefits were conferred "gratuitously by a state-supported or other public charity." Feeley v. United States, supra, at 932.